COMMONWEALTH *vs.* MICHELLE WASHINGTON.

Suffolk.  December 16, 1982. — March 1, 1983.

Present: PERRETTA, KASS, & SMITH, JJ.

*Practice, Criminal,* Required finding, Assistance of counsel. *Assault and Battery. Joint Enterprise.*

At the trial of indictments charging the defendant, as a joint venturer, with assault with intent to murder and assault and battery by means of a dangerous weapon, the evidence, although warranting a finding that the defendant had participated in a plan to beat the victim with her fists, was insufficient to enable the jury to conclude beyond a reasonable doubt that the defendant knew of a knife which the principal attacker possessed and with which he intended to murder the victim, and hence that the defendant shared the principal's intent. [381-383]

Where, at the trial of a defendant charged, as a joint venturer, with assault and battery by means of a dangerous weapon, a knife, and assault with intent to murder, the evidence was insufficient to warrant a jury in concluding that the defendant knew of a knife possessed by the principal attacker, but did warrant a conclusion that she had participated in a plan to beat the victim with her fists, this court ordered the defendant resentenced on the lesser included offense of assault and battery. [383-384]

The record in a criminal case did not support the defendant's claim that she had been denied effective assistance of counsel, where none of the alleged deficiencies in counsel's representation constituted conduct falling below the standard for an ordinary fallible lawyer. [385-387]

INDICTMENTS found and returned in the Superior Court Department on September 25, 1981.

The cases were tried before *Sullivan,* J.

*Ellen K. Wade* (*Henry F. Owens, III,* with her) for the defendant.

*Michael J. Traft,* Assistant District Attorney (*Linda M. Poulos,* Assistant District Attorney, with him) for the Commonwealth.

PERRETTA, J. The defendant was found guilty as a joint venturer on indictments charging her with an armed assault with intent to murder and assault and battery by means of a dangerous weapon, a knife. On appeal she argues that the evidence was insufficient to show that she had participated in the attack on the victim or that she had intended that the victim be murdered. The defendant also claims that her trial counsel was ineffective in representing her. We conclude that the evidence was insufficient to show beyond a reasonable doubt that the defendant knew that the principal possessed a knife and planned to murder the victim, and hence, that the defendant shared the principal's intent. We reverse the convictions and remand for resentencing on the lesser offense of assault and battery.

1. *The Facts.*

The evidence against the defendant was essentially the testimony of the victim who survived the brutal attack and related the following. In 1980, the victim was pregnant by one David Dickerson, the codefendant at trial. Dickerson did not want this child, and the victim had an abortion. Dickerson threatened to kill the victim if she again conceived by him. In January, 1981, the victim discovered that she was again pregnant by Dickerson. He did not want the child, but the victim told him that she intended to have and to keep the baby. The victim's parents demanded that Dickerson help the victim financially or jail would be probable.

The victim continued to see Dickerson, meeting him away from her home, and on April 3, 1981, the day before the attack, Dickerson spoke with the victim. He invited her to attend a flower show the following day, and he cautioned her to tell no one about their date. The next afternoon the victim met Dickerson at Park Street, Boston, as arranged, and they walked to Downtown Crossing. They were there but a few moments, browsing in front of a window display of knives, when the defendant and another woman, whose identity remains unknown, came along. Dickerson introduced both women to the victim without disclosing their names, calling them his cousins.

As a timely aside, later testimony by the victim on cross-examination by the defendant revealed that the defendant and Dickerson are not cousins; rather, the defendant is the mother of Dickerson's son. During her first pregnancy, the victim became aware of the fact that Dickerson had a son by a woman named Michelle Washington. Dickerson would tell the victim that this woman was a "pain" who was always calling him for one thing or another. The victim, however, had never met the defendant and knew of her by name only, although she once saw a picture of her and Dickerson's child in Dickerson's wallet.

At Downtown Crossing, the defendant told Dickerson that she and her friend had been shopping, had found nothing, and asked that he take them to the Dedham Mall. Dickerson asked the victim if she would like to go for a ride, she agreed, and Dickerson got his car. No further mention was made of the flower show, and the group went to Dedham. At the mall, the defendant and her friend separated from Dickerson and the victim.

Again as revealed by later testimony, in the course of the afternoon and early evening, and once while at the mall, Dickerson made several telephone calls to the victim's family, asking to speak with the victim.

The four later regrouped, left the mall, and drove to Franklin Park, Boston, arriving at around 6:00 P.M., just as it was getting dark. Dickerson parked the car on the street and asked the victim if she would like to take a walk. She agreed, and he led her to a wooded section of the park. Dickerson and the victim were embracing and kissing when the defendant and the other woman appeared. The victim asked what they were doing there, and they replied that they were "just being nosy."

As they all started to return to the car, the two women began to "crowd" the victim. With that, Dickerson stated, "Let's get to it," and grabbed the victim from behind. The defendant and the other woman then came at the victim, who closed her eyes. The victim testified that next "[t]hey pounded on my stomach." The victim lost her balance under

the blows, and Dickerson let her fall to the ground. Dickerson dropped to his knees beside the victim, took a knife from his jacket, and began stabbing her. As Dickerson was stabbing her, the victim heard, but did not see, the two women running away.[1]

Dickerson stabbed the victim repeatedly, twenty-six times in all, inflicting wounds in her back, breast, jugular vein, arms, and stomach, and left her. The victim remained still until she heard the car start, and then she managed to find her way back to the street and flag down a motorist who drove her to a hospital.

2. *Required Findings of Not Guilty.*[2]

The defendant contends that it was error to deny her motion brought under Mass.R.Crim.P. 25(a), 378 Mass. 896 (1979), because there was no evidence to show that she had participated in the punching and stabbing of the victim or that she intended that the victim be murdered. In resolving this issue, "we consider only the evidence introduced during the Commonwealth's case in chief, *Commonwealth* v. *Kelley*, 370 Mass. 147, 150 (1976)," *Commonwealth* v. *Soares*, 377 Mass. 461, 464 (1979), in order to determine "whether the evidence and the inferences permitted to be drawn therefrom are sufficient to bring minds of ordinary intelligence and sagacity to the persuasion of guilt beyond a reasonable doubt. *Commonwealth* v. *Latimore*, 378 Mass. 671, 678 (1979)." *Commonwealth* v. *Casale*, 381 Mass. 167, 168 (1980).

The defendant's claim as to the punching segment of the attack is based upon the victim's statement that she closed

---

[1] It is not clear from the victim's testimony when Dickerson's possession of a knife became apparent, before or after he dropped to the ground. The crucial point is that there is no evidence to show that the defendant saw the knife before or during the punching of the victim or before the defendant fled the scene.

[2] Although the defendant's written motion for a required finding of not guilty in the record appendix is directed only to the indictment charging her with armed assault with intent to murder, defense counsel made an oral motion on both indictments at the close of the Commonwealth's case.

her eyes as the woman approached her. It is the defendant's contention that the "they" who pounded on the victim's stomach could well have been Dickerson, as he restrained her from behind, and the other woman. We summarily reject the defendant's argument and conclude that the evidence was sufficient to warrant a jury in finding that, at the very least, the defendant had participated in a plan to beat the victim with her fists. See *Commonwealth* v. *Britt*, 358 Mass. 767, 769 (1971).

Whether the defendant could be found guilty of an armed assault with intent to murder and assault and battery by means of a dangerous weapon turns on the sufficiency of the Commonwealth's proof of a joint enterprise. "The theory underlying joint enterprise is that one who aids, commands, counsels, or encourages commission of a crime while sharing with the principal the mental state required for the crime is guilty as a principal . . . . The jury may infer the requisite mental state from the defendant's knowledge of the circumstances and subsequent participation in the offense. See *Commonwealth* v. *Ferguson*, 365 Mass. 1 (1974)." *Commonwealth* v. *Soares*, 377 Mass. at 470 (citations omitted). We have no doubt that the defendant and Dickerson planned to harm the victim. But, assuming the evidence sufficient to show that Dickerson stabbed the victim with the intention of murdering her, we conclude that it is insufficient to show that the defendant knew Dickerson possessed a knife with which he intended to murder the victim and that the defendant shared his requisite mental state, notwithstanding "all the facts and circumstances developed at the trial." *Commonwealth* v. *Casale*, 381 Mass. at 173.

The Commonwealth argues that the defendant's mental state can be inferred from: (1) her knowledge that Dickerson had a knife; and (2) the improbability of Dickerson's inviting unknowing participants to witness his evil deed after he had carefully staged an alibi. As to the evidence of the defendant's knowledge that Dickerson was carrying a knife, the Commonwealth points to the victim's testimony that she

knew from her intimate relationship with Dickerson that he carried a knife "once in a while." Because the defendant and Dickerson had a comparable relationship, the Commonwealth argues that it is permissible to infer that the defendant also knew Dickerson carried a knife "once in a while" and, hence, that he would do so on the day in question. We view such an inference as more speculative and remote than reasonable and possible. Compare *Commonwealth* v. *Ferguson*, 365 Mass. at 9-10; *Commonwealth* v. *Soares*, 377 Mass. at 472; *Commonwealth* v. *Casale*, 381 Mass. at 174. Additionally, while there may be initial appeal in the suggestion that it would be unlikely that Dickerson, intending to murder the victim, would tolerate the presence of witnesses with less than their full knowledge of and participation in the stabbing, we think that reasoning lacks probative value with respect to whether the defendant intended the victim to be murdered.

Finally, because there is an absence of evidence to show that the defendant knew of the knife or that she planned to do more than beat the victim with her fists, we think it also impermissible to infer a conditional or contingent intent that the plan be extended if necessary, as with robbery to armed robbery. See *Commonwealth* v. *Ferguson*, 365 Mass. at 9; *Commonwealth* v. *Mangula*, 2 Mass. App. Ct. 785, 789-790 (1975).

3. *Assault and Battery.*

The defendant next argues that we cannot order her to be sentenced for the crime of assault and battery because the indictments did not substantially charge, nor did she receive fair notice that she was charged with, conduct involving her fists and because the jury was never required to consider the offense of assault and battery.

The crime of assault and battery was substantially charged, as it is a lesser included offense of the crime set out in the indictment alleging an assault and battery by means of a dangerous weapon. See *Commonwealth* v. *Eaton*, 2 Mass. App. Ct. 113, 118 (1974); *Commonwealth* v. *Manning*, 6 Mass. App. Ct. 430, 437 (1978). Moreover, the de-

fendant's claim of a lack of fair notice is without merit in view of her position at trial that she was never present at Franklin Park on April 4 and that the victim's testimony was the product of jealousy and bias. And, even assuming that the trial judge's initial instructions to the jury on the lesser included offense were less than complete, his further remarks in response to the jury's question concerning joint venture demonstrate that the lesser offense was fully considered in the trial court. In view of these circumstances, we think it most appropriate that the defendant be sentenced on the offense of assault and battery. Compare *Commonwealth* v. *Dellinger*, 383 Mass. 780, 784-785 (1981).[3]

4. *Ineffective Assistance of Counsel.*

We dispose of a procedural contention before reaching the merits of the defendant's claim of the ineffective assistance of counsel, which she alleges is apparent on the record and involves no unsettled factual disputes. See *Commonwealth* v. *Porter*, 9 Mass. App. Ct. 908 (1980).

While the defendant's appeal from her convictions was pending, she moved for a new trial under Mass.R.Crim.P. 30(b), 378 Mass. 900 (1979). The trial judge denied the motion, the defendant has not appealed from that ruling, and the Commonwealth has brought the trial judge's decision before us by way of an addendum to its brief and a motion to expand the record under Mass.R.A.P. 8(a) and (e), as appearing in 378 Mass. 932, 934 (1979).[4] It is the defendant's position that we need not consider the trial judge's

---

[3] We do not consider assault with intent to murder, G. L. c. 265, § 15, as a possible lesser included offense of the crime of armed assault with intent to murder in this case because that offense was never considered in the trial court.

[4] The Commonwealth did seek to stay argument in the appeal until the motion for a new trial was decided, see Mass.R.A.P. 4(b), as appearing in 378 Mass. 929 (1979), but a single justice of this court denied the motion. This denial was presumably based upon an earlier order of another single justice expediting the appeal and denying the defendant's request for a stay of execution of sentence under Mass.R.A.P. 6(c), as appearing in 378 Mass. 931 (1979).

decision as the claimed ineffectiveness is apparent on the record; but, should we want to do so, we cannot because no appeal from that denial is before us. Therefore, the trial judge's decision is not properly part of the record appendix.

We put aside the defendant's procedural claims as we think it inappropriate to strike the trial judge's decision on the motion for new trial where, as here, the defendant has not questioned the substance of that decision either in her motion to strike or by way of a notice of appeal from the denial of the motion for new trial.

The defendant's claim of ineffective assistance of counsel breaks down into eight instances of challenged conduct by trial counsel. We are not persuaded that any of those episodes constitutes conduct falling below the standard for an ordinary fallible lawyer. *Commonwealth* v. *Saferian,* 366 Mass. 89, 96 (1974).

a. We see no professional ineptitude in failing to challenge the victim's in-court identification of the defendant. It was trial counsel's position that the victim's testimony was the product of jealousy and ill will, not mistaken identity. Moreover, as noted by the trial judge in his decision on the motion for a new trial, when the victim gave no indication at the time of the District Court proceedings that she recognized the defendant, defense counsel requested, was granted, and arranged a courtroom lineup. The victim selected the defendant without hesitation.

b. The defendant claims that her trial attorney ought to have objected to damaging, inadmissible testimony. Our review of the specified portions of the transcript shows, however, that objections were made except in those instances where the testimony, even if inadmissible, was consistent with the theory of the defense.

c. The transcript of defense counsel's arguments on the motions under Mass.R.Crim.P. 25(a) refutes the contention that he failed to understand and to appreciate the scope of the charges against the defendant.

d. If trial counsel's motion to sever the trial of the defendant from that of Dickerson seemed perfunctory rather

than real, such motions frequently take on that appearance when their only basis is a conflict of strategy between code-fendants. Compare *Commonwealth* v. *Moran*, 387 Mass. 644, 658-659 (1982).[5]

e. Assuming, without concluding, that the requests for jury instructions submitted by trial counsel were less than adequate, the instructions given by the trial judge were not.

f. We do not see, and the defendant does not demonstrate, that she suffered any prejudice from the broad form of defense counsel's questions in cross-examining the witness. As the transcript reflects and as the trial judge stated in his decision on the motion for a new trial, "Indeed [defense counsel's] estimate of these witnesses proved to be accurate since at no time did they take advantage of the wide-open questions which were submitted to them."

g. The defendant also challenges the competency of defense counsel's strategy to fight with a double-edged sword. By showing that the victim had cause for ill will and bias against the defendant, defense counsel also demonstrated that the defendant had a motive to commit the crimes charged. The inquiries of the trial judge to defense counsel concerning the wisdom and the necessity of this tactic were precipitated by the objections of Dickerson. As reflected in the trial transcript, and as put by the trial judge in his decision on the motion for a new trial, "Given the nature and quality of the government's evidence and the substantial risks involved in any other possible or available defense strategies," defense counsel's actions were not unreasonable. See *Commonwealth* v. *Adams*, 374 Mass. 722, 728-729 (1978). In view of defense counsel's knowledge prior to trial that the victim's identification of the defendant could be regarded as solid, his decision to supply a reason for disbelieving the testimony of the victim cannot be viewed as incompetent.

---

[5] By this statement, we intimate no opinion on the merits of any grounds for severance that Dickerson could claim.

h. The defendant's argument that the trial judge should have inquired of the defendant personally whether she consented to the strategy of her attorney is a dangerous position to endorse, and we will not do so. The line of questioning here undertaken was not without logic, and defense counsel stated at one side-bar conference that the defendant knew of and agreed with the strategy. This situation is quite different from that where "a criminal defendant insists that his counsel pursue a course of conduct which counsel regards as 'suicidal,' and if disclosure would not prejudice the defense or violate the attorney-client relationship, counsel might advise the judge of the problem." *Commonwealth* v. *Adams,* 374 Mass. at 730 n.4.

5. *Conclusion.*

The judgments are reversed. The matter is remanded to the Superior Court where findings of not guilty are to be entered on indictment no. 036636 and on so much of indictment no. 036834 as charges the defendant with assault and battery by means of a dangerous weapon. The defendant is to be resentenced on that indictment upon a verdict of guilty of assault and battery.

*So ordered.*