COMMONWEALTH vs. EDMUND F. HENNESSEY
(and two companion cases[1]).

Suffolk.   September 16, 1983. — December 1, 1983.

Present: PERRETTA, KAPLAN, & WARNER, JJ.

*Homicide.   Joint Enterprise.   Practice, Criminal,* Law of the case, Examination of jurors.   *Self-Defense.*

At a murder trial conducted on the theory that the defendant had participated in a joint venture with a codefendant who killed the victim with a knife, the judge's instructions, to which the Commonwealth made no objection, effectively removed from the jury's consideration the only evidence from which they could have found that the defendant knew the codefendant was carrying a knife on the day of the murder, with the result that, on the defendant's appeal from a conviction of second degree murder, this court set aside the verdict and remanded the case for entry of a finding of guilty of the lesser included offense of assault and battery. [161-165]

The judge at a murder trial acted within his discretion in questioning prospective jurors as a group, rather than individually, where neither the defendants' general assertions as to widespread news media coverage of the case, nor the jurors' responses to his questioning, indicated any substantial risk that extraneous issues would influence the jury. [165-167]

On appeal from a conviction of murder, following a trial in which the defendant raised a claim of self-defense, there was no merit to the contention that the judge erred in excluding evidence of the victim's earlier conviction of carrying a double-edged knife, where there was no evidence that the defendant, at the time of the crime, had any knowledge of the victim's character or of the conviction. [167]

INDICTMENTS found and returned in the Superior Court Department on November 25, 1981.

---

[1] One of the companion cases is against Hennessey and one is against William M. Dorsey.

The cases were tried before *James P. Donohue*, J.

*John F. Palmer* for William M. Dorsey.

*Robert I. Warner* for Edmund F. Hennessey.

*Michael J. Traft*, Assistant District Attorney, for the Commonwealth.

WARNER, J. The defendants were convicted of murder in the second degree of Michael T. Lumenti. Hennessey was also convicted on the lesser included charge of larceny on an armed robbery indictment, and on an indictment charging cruelty to an animal.[2] The defendants' appeals raise discrete issues.

1. Dorsey argues that there was error in the denial of his motion for a required finding of not guilty because there was no evidence that he participated in a joint venture with Hennessey involving the use of a knife. We summarize the facts, viewing the evidence in the light most favorable to the Commonwealth, which the jury could have found beyond a reasonable doubt. See *Commonwealth* v. *Latimore*, 378 Mass. 671, 677-678 (1979). On the afternoon of September 30, 1981, a group of young people were standing near a bank of public telephone booths near a Park Street MBTA station entrance at the Boston Common. A dog urinated on Hennessey, and everyone in the group, including Dorsey, laughed. Hennessey kicked at the dog and chased it. The dog escaped but a few minutes later came back to the area of the telephone booths, whereupon Hennessey stabbed the dog with a knife which he slid from his coat sleeve. Lumenti approached Hennessey, they scuffled, and Lumenti backed Hennessey away with a blow with a bag; Hennessey then left the scene. Lumenti took off his sweatshirt, wrapped the dog in it and left in a taxi cab.

On the afternoon of October 3, 1981, Lumenti was talking with a vendor near an entrance to the Park Street MBTA station at the Boston Common. Hennessey and Dorsey ap-

---

[2] The latter conviction was placed on file with Hennessey's consent and is, therefore, not before us. See *Commonwealth* v. *Hoffer*, 375 Mass. 369, 370 n.1 (1978).

proached Lumenti from the rear and one of them said. "We've got you now, m. . . .r f. . . .r." Dorsey struck Lumenti on the back with a leather bag. Hennessey and Dorsey pushed and kicked Lumenti; Dorsey was struck with a dog chain by Lumenti and fell back, taking the chain with him; Hennessey and Lumenti continued to struggle briefly until Hennessey slid a knife from his coat sleeve and stabbed Lumenti in the chest. Lumenti said, "He stabbed me. Call the police," and ran to the Park Street Station. Hennessey took from the ground a leather bag belonging to Lumenti, and Hennessey and Dorsey fled the scene in different directions. Lumenti died that afternoon as a result of the stab wound which perforated his heart.

The Commonwealth proceeded against Dorsey on a theory of joint venture. "To sustain a conviction on that theory the Commonwealth must show that [Dorsey] 'intentionally assisted [Hennessey] in the commission of the crime and that he did this, sharing with [Hennessey] the mental state required for that crime.'" *Commonwealth* v. *Pope,* 15 Mass. App. Ct. 505, 509 (1983), quoting from *Commonwealth* v. *Richards,* 363 Mass. 299, 307-308 (1973). See *Commonwealth* v. *Scanlon,* 373 Mass. 11, 17 (1977). Where, as here, the crime charged is murder, the required mental state is malice aforethought. "As was stated in *Commonwealth* v. *Mangum,* 357 Mass. 76, 85 (1970), the word 'malice' 'includes any intent to inflict injury . . . without legal excuse or palliation. If there was an intention on the part of the defendant to inflict injury on the deceased which was not justified on any lawful ground or palliated by the existence of any mitigating circumstances, that intention was malicious within the meaning of the law. *Commonwealth* v. *Webster,* 5 Cush. 295, 304 [1850]. *Commonwealth* v. *Bedrosian,* 247 Mass. 573, 576 [1924]. *Commonwealth* v. *Boyajian,* 344 Mass. 44, 48 [1962]. ". . . [I]t is possible to commit murder without any actual intent to kill or to do grievous bodily harm, and, . . . reduced to its lowest terms, malice in murder means knowledge of such circumstances that according to common experience there is a plain and

strong likelihood that death will follow the contemplated act, coupled perhaps with an implied negation of any excuse or justification." *Commonwealth* v. *Chance*, 174 Mass. 245, 252 [1899].'" *Commonwealth* v. *Scanlon, supra* at 18. Here the evidence established beyond a reasonable doubt that Dorsey participated with Hennessey in the assault and battery on Lumenti, and that Hennessey murdered Lumenti with a knife. The issue is whether Dorsey shared with Hennessey the mental state required for the crime of murder. "[I]t would suffice if the purpose to murder in the mind of [Dorsey] was a conditional or contingent one, a willingness to see the [knifing] take place should it become necessary." *Commonwealth* v. *Richards, supra* at 308. See *Commonwealth* v. *Scanlon, supra* at 17. "Our cases concerning accessorial responsibility for the possession [and wrongful use] of a weapon by another have involved circumstances in which the person not in possession of the weapon knew that the other person had a weapon." *Commonwealth* v. *Watson*, 388 Mass. 536, 544 (1983). See *Commonwealth* v. *Richards, supra* at 308; *Commonwealth* v. *Clark*, 363 Mass. 467, 472-473 (1973); *Commonwealth* v. *Ferguson*, 365 Mass. 1, 8-9 (1974); *Commonwealth* v. *Washington*, 15 Mass. App. Ct. 378, 382-383 (1983). See also *Commonwealth* v. *Soares*, 377 Mass. 461, 472 (1979); *Commonwealth* v. *Casale*, 381 Mass. 167, 174-175 (1980). The judge correctly charged the jury that in order to find Dorsey guilty of murder they had to find beyond a reasonable doubt that Dorsey knew Hennessey was armed with a knife.

We turn then to the question whether there was sufficient evidence upon which the jury could find beyond a reasonable doubt that Dorsey knew that Hennessey possessed a knife on the day of the murder. The Commonwealth concedes that the only evidence bearing on the question was that Dorsey was in the group present on September 30, 1981, and observed Hennessey chasing the dog and later stabbing the dog with a knife which he slid from his coat sleeve, in the same manner as he did just prior to stabbing Lumenti. Assuming, without deciding, that this evidence

would permit a rational inference that Dorsey knew that Hennessey possessed a knife on October 3, we conclude, because of the judge's instructions to the jury on the matter, that this evidence was excluded from the jury's considera- tion in the case against Dorsey on the charge of murder. During the first day of testimony, after the Commonwealth's first eyewitness had described the dog stabbing incident, which was the subject of an indictment against Hennessey alone, the judge instructed the jury: "Mr. Foreman and ladies and gentlemen, this testimony that you have heard concerning Mr. Hennessey and *the knife* and the dog, if that is what the evidence was, this does not pertain and *you may not consider it in the case against Mr. Dorsey"* (emphasis supplied). On three subsequent occasions, the first shortly after the above instruction, the judge gave similar limiting instructions.[3] The Commonwealth did not object or suggest any limitation on these instructions, for example, that while the evidence could not be considered against Dorsey on a crime for which he was not charged or as an aggravating circumstance in the crime for which he was charged, it could be pondered by the jury on the question whether Dor- sey knew Hennessey carried a knife on October 3. We need

---

[3] The first instruction was:

> "I think I already informed you, ladies and gentlemen, that this evidence [with respect to the dog stabbing incident] does not per- tain to Mr. Dorsey and you may not consider it against him."

The second instruction came after testimony of the Commonwealth's second eyewitness describing the dog stabbing incident, and was:

> "Mr. Foreman, ladies and gentlemen of the jury, none of the evi- dence that you heard pertaining to the dog pertains to or may be considered in the case against the defendant Dorsey."

The third instruction was given after the testimony of an employee of the Angell Memorial Animal Hospital, to which the dog had been taken for treatment, and was:

> "Once again, Mr. Foreman and ladies and gentlemen, this particular evidence does not pertain to and may not be considered in the indictment pending against Mr. Dorsey."

not, however, rule on the appropriateness of the instructions given. "Since the instruction[s] did not harm the defendant and [were] not challenged [they] 'became the law of the case by which the jury properly could be governed.'" *Commonwealth* v. *Graves,* 363 Mass. 863, 868 (1973), quoting from *Commonwealth* v. *Peach,* 239 Mass. 575, 581 (1921). See *Tompkins* v. *Quaker Oats Co.,* 239 Mass. 147, 150 (1921); *Commonwealth* v. *Rand,* 363 Mass. 554, 564 (1973). Without evidence that Dorsey knew that Hennessey carried a knife on the day of the dog stabbing, which we think was effectively removed from consideration by the jury by the judge's instructions,[4] there was no evidence from which the jury could have found that Dorsey knew that Hennessey carried a knife on the day of the murder. There was, therefore, no proof of a joint venture to commit murder (see *Commonwealth* v. *Washington,* 15 Mass. App. Ct. at 382-383), and it was error to deny Dorsey's motion for a required finding of not guilty on the charge.[5]

The jury were instructed on the lesser included offense of assault and battery. Dorsey does not challenge the sufficiency of the evidence on that offense. We think Dorsey should be sentenced as for assault and battery. See *Commonwealth* v. *Washington, supra* at 383-384.

2. Hennessey first challenges the refusal of the judge to conduct an individual voir dire of each prospective juror. See G. L. c. 234, § 28, as amended through St. 1975, c. 335. Hennessey's counsel, joined by Dorsey's counsel, represented, in very general terms, to the judge that the case had received widespread news media coverage, and was referred to as "The Killing Among the Common." The judge briefly described to the jurors, by date, place and incident, the subject matter of the indictments. The judge questioned the jurors as a group. To the question whether any

---

[4] "[W]e shall not assume that jurors will slight strong and precise instructions of the trial judge to disregard the matters which have been withdrawn from their consideration." *Commonwealth* v. *Prendergast,* 385 Mass. 625, 631 (1982), quoting from *Commonwealth* v. *Gordon,* 356 Mass. 598, 604 (1970).

[5] In view of this disposition, we do not reach the question whether there was error in the judge's instructions on joint venture.

of the jurors knew about the case from any source, including the news media, two jurors responded; both said they had read about the case in the Boston Globe newspaper long before. One juror, who responded that she did not think she would be influenced by what she read, was not excused; the second juror, who said that he did not know whether he would be influenced, was excused. A third juror came forward during the examination and said that she became "emotional" over animal abuse, and she was excused.

There is no absolute requirement for individual voir dire of jurors. General Laws c. 234, § 28 "'is designed to impose a duty on the judge to examine jurors fully with respect to possible bias or prejudice if it appears that particular jurors or the jury pool as a whole may be influenced by extraneous factors to the extent that jurors would be unable to render an impartial verdict on the evidence presented to them and must, therefore, be excused for cause.' *Commonwealth* v. *Dickerson*, 372 Mass. 783, 793 (1977). There must be some basis for finding a substantial risk that extraneous issues would influence the jury. *Commonwealth* v. *Campbell*, 378 Mass. 680, 696 (1979). 'The judge has discretion in deciding whether that preliminary foundation has been laid.' *Commonwealth* v. *Jones*, 9 Mass. App. Ct. 103, 115, *S.C.*, 380 Mass. 939 (1980). The defendant may supply the judge with information constituting the foundation. Nevertheless, from the nature and posture of a case, the judge may be able to ascertain on his own whether there is a need for individual voir dire." *Commonwealth* v. *Shelley*, 381 Mass. 340, 352 (1980) (footnote omitted). There are, of course, cases where specific individual voir dire is required. See, e.g., *Commonwealth* v. *Sanders*, 383 Mass. 637, 641 (1981) (interracial rape); *Commonwealth* v. *Hobbs*, 385 Mass. 863, 873 (1982) (interracial sexual offenses against children); *Commonwealth* v. *Stephens*, 15 Mass. App. Ct. 461, 465 (1983) (interracial relationship between pander and prostitute involving physical violence). Cf. *Commonwealth* v. *Lumley*, 367 Mass. 213 (1975); *Commonwealth* v. *Sowers*, 388 Mass. 207 (1983). There is nothing in this

case which would bring it within the rule expressed in those cases.

There was nothing in the general assertions made to the judge to provide a basis for finding that there was a substantial risk that extraneous issues would influence the jury. The responses made by three jurors to the questions put to the jurors as a whole and the lack of any response from others (see *Commonwealth* v. *Jones,* 9 Mass. App. Ct. at 115), helped to confirm the judge's determination that there was no need for individual voir dire. There was no abuse of discretion.

3. Hennessey next claims that it was error for the judge to exclude a certified copy of the record of Lumenti's conviction on a charge of carrying a double-edged knife. This evidence, Hennessey argues, was relevant to his claim of self-defense. The short answer to the argument is that there was no evidence that the defendant had any knowledge of Lumenti's character or of the conviction. "Where self defence is invoked by a defendant . . . the character of the person hurt or killed as a powerful, dangerous, quarrelsome or violent person, if known to the defendant, may be admitted [as evidence of the defendant's apprehension for his own safety, and the reasonableness of that apprehension] . . . . For this purpose knowledge by the defendant at the time of the act of . . . the character of the person hurt or killed, is essential." *Commonwealth* v. *Rubin,* 318 Mass. 587, 588 (1945) (citations omitted). See *Commonwealth* v. *Edmonds,* 365 Mass. 496, 501 (1974), and cases cited; Liacos, Handbook of Massachusetts Evidence 415 (1981, Supp. 1983). Proposed Mass.R.Evid. 404 would not change this rule. See the Advisory Committee's notes to that rule. Compare Fed.R. Evid. 404 (a) (2).

Hennessey also says that he should have been allowed to introduce the conviction to impeach the credibility of Lumenti's statement: "He stabbed me." The argument is frivolous. Hennessey claimed self-defense, and he thereby conceded the truth of Lumenti's statement.

4. The judgment against Dorsey for murder in the second degree is reversed, and the verdict is set aside. The case is remanded to the Superior Court for entry of a finding of guilty of assault and battery and for resentencing of Dorsey as for assault and battery. The judgments against Hennessey are affirmed.

*So ordered.*