COMMONWEALTH *vs*. EDMUND F. HENNESSEY.

Suffolk.  November 19, 1986. — January 14, 1987.

Present: KASS, KAPLAN, & FINE, JJ.

*Practice, Criminal,* New trial, Waiver, Defendant's decision not to testify. *Waiver.*

A judge acted within his discretion in denying a criminal defendant's motion for a new trial based upon the affidavit of a codefendant who had not testified at trial, where the evidence expressed in the affidavit was not of a character to create a substantial risk that a jury exposed to it would have reached a different conclusion. [385-386]

At a criminal trial, a colloquy between the judge and a defendant represented by counsel, to ascertain whether the defendant has knowingly and voluntarily waived his right to testify, is neither constitutionally required nor appropriate to the fair management of the trial. [386-388]

INDICTMENTS found and returned in the Superior Court Department on November 25, 1981.

A motion for a new trial filed on January 3, 1985, was heard by *James P. Donohue,* J.

*Ellen K. Wade* for the defendant.

*Robert N. Tochka,* Assistant District Attorney, for the Commonwealth.

KASS, J. In *Commonwealth* v. *Hennessey,* 17 Mass. App. Ct. 160 (1983) (*Hennessey I*), we affirmed Hennessey's conviction of murder in the second degree.[1] Thereafter, on March 28, 1984, the defendant moved pro se for a new trial and the appointment of counsel.

With the assistance of fresh counsel,[2] Hennessey pressed his motion for a new trial on two grounds: (1) newly discovered

---

[1] Convictions of larceny and cruelty to animals were also affirmed.

[2] Counsel appointed to press the new trial motion was the fourth lawyer appointed to represent Hennessey.

evidence, and (2) deprivation of the right to testify at trial in his own behalf. As to the latter ground, Hennessey asserts that his desire to take the stand was overborne by his lawyer and that the trial judge, on his own initiative, should have inquired of the defendant whether his failure to testify was voluntary. The motion for a new trial was denied after hearing,[3] setting the stage for this appeal.

1. *Newly discovered evidence.* Hennessey's conviction arose out of the fatal stabbing of Michael Lumenti on October 3, 1981. The circumstances of that tragedy are recounted in *Commonwealth* v. *Hennessey,* 17 Mass. App. Ct. at 161-162. While the *Hennessey* opinion affirmed the judgment upon Hennessey, it held that Dorsey, a codefendant, was entitled to a required finding of not guilty on the charge of murder. *Id.* at 163-165. Dorsey had declined to testify at trial but after his conviction was reversed came forward with an account, enshrined in an affidavit, concerning a detail of the killing. At trial, a percipient witness, a pretzel vendor, testified that Dorsey had wrested from Lumenti, the victim, a short dog chain which Lumenti had used to defend himself from the attack by Dorsey and Hennessey. Dorsey was now prepared to say that he had not wrested the dog chain from the victim. That evidence, Hennessey urges, materially strengthens the claim of self-defense he had made at trial.

In a memorandum of decision accompanying his denial of Hennessey's motion for a new trial, the trial judge questioned whether Dorsey's proffered evidence was newly discovered in the sense of not having been previously known. See *Commonwealth* v. *Brown,* 378 Mass. 165, 171-172 (1979). In any event, the judge remarked that an affidavit of a codefendant who did not testify at trial was the weakest sort of evidence. In that regard he was on firm ground. See *Commonwealth* v. *Grace,* 370 Mass. 746, 752 (1976); *Commonwealth* v. *Crowe,* 21 Mass. App. Ct. 456, 487 (1986); *Dirring* v. *United States,*

---

[3] We do not detain the reader with an account of the trial court and appellate proceedings which occurred prior to the time the trial judge held a hearing on the motion for a new trial.

353 F.2d 519, 520 (1st Cir. 1965). "[I]f a new trial could be predicated as of right upon a codefendant's change of heart after failure to take the stand there could always be a second chance for everyone." *Ibid.*

Appropriately, the judge invoked his position to assess the probable impact of the proffered evidence on the jury together with the other evidence presented. *Commonwealth* v. *Bernier,* 359 Mass. 13, 16 (1971). *Commonwealth* v. *Grace,* 397 Mass. 303, 305-307 (1986). *Commonwealth* v. *Markham,* 10 Mass. App. Ct. 651, 655 (1980). His appraisal of Dorsey's evidence was that it was not of a character to create a substantial risk that a jury exposed to it would have reached a different conclusion. See *id.* at 655. The judge, manifestly, suffered no apprehension "that justice may not have been done." Mass.R.Crim.P. 30(b), 378 Mass. 900 (1979). *Commonwealth* v. *Markham,* 10 Mass. App. Ct. at 654.

A motion for a new trial, in the absence of constitutional error, is addressed to the sound discretion of the trial judge. *Commonwealth* v. *Grace,* 370 Mass. at 751. *Commonwealth* v. *Smith,* 381 Mass. 141, 142 (1980). *Commonwealth* v. *Grace,* 397 Mass. at 307. Reversal of action on such a motion is extremely rare. *Commonwealth* v. *Leavitt,* 21 Mass. App. Ct. 84, 85 (1985). It is implausible that a jury exposed to the mindless and repellant homicide described in *Hennessey I,* 17 Mass. App. Ct. at 161-162, would have reached a different result. Cf. *Commonwealth* v. *Ciminera,* 11 Mass. App. Ct. 101, 107 (1981). We detect neither abuse of discretion nor manifest injustice.

2. *Defendant's right to testify and the need for a colloquy on that subject.* Although discussions of testimonial privilege more often concern themselves with the right *not* to testify, the right to testify in one's own behalf is equally fundamental. *Harris* v. *New York,* 401 U.S. 222, 225 (1971). *Commonwealth* v. *Siciliano,* 19 Mass. App. Ct. 918, 920 (1984). The decision whether to testify, in consultation with counsel, is, in the last analysis, to be made by the defendant. See *Wainwright* v. *Sykes,* 433 U.S. 72, 93 n.1 (1977) (Burger, C.J., concurring); ABA Standards for Criminal Justice § 4-5.2(a) (2d ed. 1982).

As to basic rights, a strict standard of waiver applies. *Schneckloth* v. *Bustamonte,* 412 U.S. 218, 241 (1973).

With those principles in mind, we are unpersuaded by Hennessey's argument that he was deprived of the right to testify in his own behalf. We think his decision not to testify was knowing and intelligent. Hennessey's full appeal, which resulted in *Hennessey I,* was briefed and argued by counsel other than the experienced lawyer who had tried the case. That appeal, therefore, was unencumbered by a need of counsel to justify a position previously taken or by a strained relationship (if there was one) between the defendant and trial counsel. Yet the appeal did not breathe a word hinting frustration of Hennessey's right to testify. The trial judge, when he had the motion for a new trial before him, could have been forgiven for smelling an after-the-fact invention. See *Commonwealth* v. *Wooldridge,* 19 Mass. App. Ct. 162, 170 (1985). For this there was support in the record. Hennessey's trial counsel had moved in limine to preclude the prosecution from impeaching the defendant with his prior convictions. The motion was denied. Deciding not to testify was consistent with that sequence of events.[4]

At his trial, Hennessey gave the judge no indication of conflict with his lawyer about a desire to testify. Hennessey's counsel, after consultation with the codefendant's counsel, asked for, and received, a jury instruction that the jurors were not to draw an adverse inference from his failure to take the stand. See *Commonwealth* v. *Buiel,* 391 Mass. 744, 745-747 (1984). There was no suggestion at the time of a disagreement between counsel and client. See *United States* v. *Systems Architects, Inc.,* 757 F.2d 373, 375-376 (1st Cir. 1985), cert. denied, 474 U.S. 847 (1985).

---

[4] We are unconvinced by the defendant's argument that a motion in limine about prior convictions is virtually routine and that no inferences should be drawn from the making of such a motion. Relatively routine they may be (*Commonwealth* v. *Rossi,* 19 Mass. App. Ct. 257 [1985], and *Commonwealth* v. *Reid,* 22 Mass. App. Ct. 730, 735 n.5 [1986], further appellate review granted, 398 Mass. 1106 [1986]), but the fact such a motion is made at all means that the defense has prior convictions to worry about should the defendant take the stand.

During the hearing on the motion for a new trial, the "right to testify" point was lightly pressed compared to the "new evidence" issue. For example, an affidavit had been obtained from trial counsel about what significance he attributed to Dorsey's proffered testimony. The affidavit is silent on the question of any disagreement with the defendant about his testifying. The judge in his memorandum of decision on the new trial motion confined himself to discussion of the purported newly discovered evidence and did not refer to the defendant's claim that he had been prevented from testifying. We would have welcomed the judge's finding on the latter issue, but his denial of the motion is an implicit statement that he did not credit the defendant's affidavit that he had wanted to testify.

Relying on *People* v. *Curtis,* 681 P.2d 504, 514 (Colo. 1984), Hennessey urges us to require trial judges to conduct a colloquy with a defendant to assure, on the record, that the defendant has knowingly relinquished the right to testify. In *Commonwealth* v. *Siciliano,* 19 Mass. App. Ct. at 920-921, we said that Massachusetts did not require a voir dire to ascertain whether a defendant had knowingly and voluntarily waived that right. In response to the defendant's argument, we now express our opinion that such a colloquy is neither constitutionally required nor appropriate to the fair management of a trial.

The idea expressed in Colorado's *Curtis* case, that the trial judge should discuss with the defendant his right to testify, has found partial acceptance in *Culberson* v. *State,* 412 So.2d 1184, 456 So.2d 697 (Miss. 1984). Other courts have rejected a requirement of an on-the-record colloquy in the absence of an indication by the defendant to the trial judge that he wished to take the stand. See *State* v. *Allie,* 147 Ariz. 320 (1985); *Cutter* v. *State,* 460 So.2d 538 (Fla. Dist. Ct. App. 1984); *People* v. *Simmons,* 140 Mich. App. 681 (1985); *State* v. *Hayes,* 314 N.C. 460, 474-475 (1985). See also *State* v. *Albright,* 96 Wis. 2d 122, cert. denied, 449 U.S. 957 (1980), which antedated the *Curtis* case.

In *United States* v. *Systems Architects, Inc.,* 757 F.2d at 376, the First Circuit, commenting on the heavy element of trial tactics involved in the decision not to testify, said that

there is no constitutional or statutory mandate that a trial judge inquire into a defendant's decision not to testify. See to the same effect, *United States* v. *Janoe,* 720 F.2d 1156, 1161 (10th Cir. 1983), cert. denied, 465 U.S. 1036 (1984). There are persuasive pragmatic reasons why we think this is a sound view.

Unlike the broad strategic decision of waiving the right to trial by jury, which is made before trial begins, or pleading guilty, which is generally made before trial but, in all events, brings trial to an end, the decision whether the defendant shall take the stand is a tactical one.[5] It is often reserved to await developments in the trial. Those developments may be such that taking the stand would be the lesser evil. Conversely, the trial's course may be such that the wiser maneuver is not to expose the defendant to cross-examination before a jury or to a recital of his prior convictions. When then ought the colloquy between judge and defendant occur? The judge cannot know that the defendant has not testified until the defense has rested. That is surely an awkward time to engage in a discussion with the defendant which might lead to a rupture with defense counsel (such might be the case should counsel be convinced the story his client wanted to tell was false)[6] or might undo a trial strategy based on the defendant's not testifying.

Unlike the right to a jury trial and the right to plead not guilty, the right to testify has a mirror image which is constitutionally protected, viz., the right not to testify, to remain silent. When a trial judge intercedes with a colloquy regarding jury trial or the right to plead not guilty, the judge's intentions are

---

[5] As to the requirement of a colloquy in connection with a plea of guilty, see Mass.R.Crim.P. 12(c) (3), 378 Mass. 868 (1979); *Boykin* v. *Alabama,* 395 U.S. 238, 242 (1969); *Commonwealth* v. *Morrow,* 363 Mass. 601, 604 (1973); *Commonwealth* v. *Duquette,* 386 Mass. 834, 841 (1982). The requirement of a colloquy in connection with waiver of trial by jury is discussed in *Ciummei* v. *Commonwealth,* 378 Mass. 504, 507-511 (1979), and its progeny, for example, *Commonwealth* v. *Schofield,* 391 Mass. 772 (1984), and *Commonwealth* v. *Abreu,* 391 Mass. 777 (1984). See Smith, Criminal Practice & Procedure §§ 1653-1654 (2d ed. 1983).

[6] See S.J.C. Rule 3:07, DR 7-102A(4), as appearing in 382 Mass. 785 (1981). A lawyer shall not knowingly use perjured testimony or false evidence.

clear. He is informing the defendant of constitutionally provided protections. The right to testify is more complex. There is a risk that in explicating the right to testify the judge will cast in unflattering light the right not to testify. To claim the privilege not to testify, the defendant merely remains silent. He does not have to *claim* anything. *United States* v. *Ives,* 504 F.2d 935, 939-940 (9th Cir. 1974), vacated on other grounds, 421 U.S. 944 (1975). Requiring a trial judge to ask the defendant whether he wishes to testify would carry with it a risk of introducing error if the exchange between judge and defendant appeared to press the merits of taking the stand. See 504 F.2d at 939-940; *Commonwealth* v. *Guess, ante* 208, 211-212 (1986). The judge does not know what the defendant is going to say or the defendant's capacity as a witness. Thus in the dark, the judge can scarcely engage in a useful discussion with the defendant.

For reasons such as these, courts have shied from insinuating judges into the resolution of tactical questions which are properly those of counsel. See *Estelle* v. *Williams,* 425 U.S. 501, 512 (1976); *Wainwright* v. *Sykes,* 433 U.S. at 93. As we had occasion to say very recently, "Appellate courts have not been in favor of a judge's taking over the trial of a case." *Commonwealth* v. *Guess, supra* at 211. See *Commonwealth* v. *Campbell,* 371 Mass. 40, 45 (1976).[7]

We decline to require an on-the-record waiver of the defendant's right to testify or that the judge engage in a colloquy with the defendant about the subject.

*Order denying motion for a new
trial affirmed.*

---

[7] *Commonwealth* v. *Siciliano,* 19 Mass. App. Ct. at 921, is not to the contrary. It simply acknowledged, without discussion, the utility of a waiver of the right to testify on the record. If it can be done through a guarded question to counsel or the defendant, there may be some benefit.