## COMMONWEALTH vs. KENNETH WATERS.

Middlesex.   January 5, 1987. — April 23, 1987.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & NOLAN, JJ.

*Homicide. Evidence,* Admissions and confessions, Photograph. *Practice, Criminal,* Voir dire, Voluntariness of statement, Instructions to jury, New trial, Retroactivity of judicial holding. *Constitutional Law,* Admissions and confessions, Waiver of constitutional rights. *Waiver.*

The holding of this court in *Commonwealth* v. *Allen,* 395 Mass. 448 (1985), requiring a trial judge to conduct a voir dire examination to determine the voluntariness of a criminal defendant's uncoerced statements to a private person, is limited to prospective application. [711-714]

Failure of the judge at a criminal trial to instruct the jury that the defendant's intoxication might render involuntary the statements he had made to a private person created no substantial risk of a miscarriage of justice, where the defendant neither proposed further instructions nor objected to the instructions as given, and where defense counsel had fully cross-examined witnesses concerning the defendant's state of mind at the time he made the statements and had argued the issue to the jury. [714-715]

At a criminal trial no error appeared in the admission in evidence of a police "mugshot" photograph of the defendant, where the origin of the photograph was not readily apparent and where the jury knew that the defendant had been arrested previously. [715-716]

At a murder trial the judge acted within his discretion in admitting in evidence photographs of the victim's body, which were relevant to the issue whether the murder was committed with extreme atrocity or cruelty. [716]

A trial judge is not required to conduct a voir dire to determine whether a criminal defendant is voluntarily, knowingly and intelligently exercising his right to testify or not to testify. [716-717]

A judge was warranted in concluding that a criminal defendant understood his right to testify at his trial. [717]

INDICTMENTS found and returned in the Superior Court Department on November 15, 1982.

The cases were tried before *George C. Keady, Jr., J.*

*Harvey R. Peters* for the defendant.

*Karen J. Kepler,* Assistant District Attorney, for the Commonwealth.

HENNESSEY, C.J. The defendant appeals from his convictions of murder in the first degree and armed robbery. The defendant's principal contentions are that the judge failed to conduct voir dire examinations to determine the voluntariness of the defendant's inculpatory statements made to private persons, failed to instruct the jury properly on voluntariness, erred in admitting a "mug shot" of the defendant and photographs of the victim's body, and erred in denying the defendant's motion for a new trial based in part on deprivation of his right to testify at trial. The defendant also urges this court to exercise its power under G. L. c. 278, § 33E (1984 ed.), to grant him a new trial. We conclude that there was no error, and decline to grant the relief requested under § 33E. We affirm.

The victim, Katharina Reitz Brow, was found brutally murdered in her "trailer" home in Ayer on May 21, 1980. She had been killed between 7:10 A.M., when her husband had left for work, and 10:45 A.M., when her body was found. She had been stabbed thirty times, with five stab wounds penetrating her heart. In addition, she had been struck repeatedly with a blunt instrument. The medical examiner testified that the victim probably had died closer to 7:10 A.M. than 10:45 A.M., had been alive when struck with the blunt instrument, had been alive between ten and twenty minutes after being stabbed, and had been conscious approximately half that time. There was no sign of forced entry into her home, but there were many signs of a struggle. The victim's purse, containing cash and jewelry, and which the victim normally kept in the linen closet, was missing, as was a large sum of cash the victim kept between some sheets in the linen closet. There were no other signs that the house had been searched or that anything else had been taken. The murder weapon, a knife, was found in a wastebasket.[1]

---

[1] There was evidence from the defendant's former girl friend, Marsh, that the murder weapon looked like a knife that the defendant regularly carried. In addition, there was evidence that the defendant had used a similar knife at his job with a moving company, and that the knife had disappeared when the defendant left that job.

At the time of the murder, the defendant lived in a house near the victim's, and worked at the Park Street Diner, where the victim was a regular customer. Adi Ogden, a close friend of the victim who also worked at the Park Street Diner, and Eugenie Brow, the victim's daughter-in-law, testified that the victim commonly carried a large amount of cash in her wallet, which people at the diner had seen, and that the victim had been told several times in the diner that she should not carry so much cash. Both Adi Ogden and Eugenie Brow testified that the victim kept a large sum of cash in her linen closet between some sheets.

The defendant's former girl friend, one Marsh, who lived with him at the time, testified that, approximately one week before the murder, the defendant stated to her that a German woman had a lot of money in her trailer, and that he would like to get that money. She also testified that, at approximately 10 P.M. on May 20, 1980, the defendant dressed in his work clothes, said he was going to work, and left in his car. She tried to telephone him at the diner later that evening, but was told he was not working. She testified that the defendant returned home the next morning, May 21, 1980, in the late morning or early afternoon dressed in the same clothes. She stated she noticed a scratch on his face, and that he told her it was none of her business and went to bed. She later saw police cars at the victim's home. She testified that, when she mentioned this to the defendant, he replied that, "[i]f any police came, tell them he wasn't there." The defendant and Marsh moved to Providence, Rhode Island, at the end of June, 1980. In the third week of July, Marsh testified, she and the defendant had an argument, during which she asked him whether he had "killed that woman back there." The defendant, who had been drinking, responded, "Yeah, what's it to you?" Marsh moved to Worcester the next day.

One Perry, another former girl friend of the defendant, testified that she had met the defendant during the summer of 1980. On several occasions when he had been drinking, she testified, the defendant stated that he had been picked up for murder, but that "they couldn't pin it on him." On another

occasion in late winter, 1982, Perry testified, the defendant was drunk and stated that he had killed the "old German bitch"; had stabbed her, and had taken her money and jewelry.

Adi Ogden testified that the defendant had come into the diner a few weeks after the murder while Ogden was working. The defendant said that he hated the victim because she had caused him to be sent to reform school for breaking into her house when he was ten years old. Ogden told the defendant that she was glad she had a German shepherd dog to prevent anyone from entering her house. She testified that the defendant responded, "dog or no dog, when he wants to kill, he will kill." Ogden also testified that the defendant returned to the diner approximately five or six weeks after the murder, and offered to sell her a ring and a necklace. Ogden testified that she recognized the ring and necklace as gifts she had given the victim several years before, and paid the defendant $5 for the ring, which she then took to the police.

The defendant, who did not testify at trial, offered evidence from other witnesses which he says establishes that he had gone to work on May 20, 1980, had worked a double shift, and had appeared in Ayer District Court on the morning of May 21, 1980, on a charge of assaulting a police officer. In addition, the defendant introduced testimony attempting to impeach the credibility of the Commonwealth's witnesses.

Prior to trial, the defendant requested that the judge conduct a voir dire examination to determine the voluntariness of the statements the defendant made to Marsh and Perry. The judge declined to conduct a voir dire. The jury found the defendant guilty of murder in the first degree, based on both extreme atrocity or cruelty and felony murder, and guilty of armed robbery. The defendant appealed from his convictions, and subsequently filed a motion for a new trial in this court, which we remanded to the Superior Court, staying the appeal pending action on that motion. The trial judge denied the motion.

1. The defendant argues that the judge erred in failing to conduct a voir dire examination to determine the voluntariness of statements the defendant made to Marsh and Perry. The defendant asserts that, because there was evidence that the

defendant was intoxicated when he made the inculpatory state-
ments, the judge was required to conduct a voir dire examina-
tion. See *Commonwealth* v. *Allen,* 395 Mass. 448, 456 (1985).
The defendant does not contend that Marsh and Perry were in
any sense agents of the police, or that either of them plied him
with liquor to elicit a statement. In *Allen,* this court stated:
"When the voluntariness of a defendant's statements to private
citizens is an issue, the judge should conduct a voir dire to
determine the voluntariness of the statements." *Id.* at 456.[2]
*Allen* was decided after the defendant's trial. Therefore, we
must determine whether the rule announced in *Allen* should
be applied retroactively.

In *Commonwealth* v. *Breese,* 389 Mass. 540, 541 (1983),
we articulated the standards to be applied to determine whether
an announced rule will be applied retroactively: "[W]e first
must resolve whether the decision announced a new rule. De-
cisional law usually is retroactive. When a decision announces
a new rule, however, the issue arises whether it will be applied
only prospectively." To be applied only prospectively, a deci-
sion must "establish a new principle of law, either by overruling
clear past precedent on which litigants may have relied . . .
or by deciding an issue of first impression whose resolution
was not clearly foreshadowed . . . ." *Id.* at 542, quoting
*Chevron Oil Co.* v. *Huson,* 404 U.S. 97, 106 (1971).

The defendant contends that *Allen* was foreshadowed by
prior decisions, and therefore should be applied retroactively.
We disagree. It is true that we stated in *Allen, supra* at 456,
that "[w]hile we have never squarely decided the issue, our
decisions suggest that a judicial determination of voluntariness
is necessary whenever questions concerning the voluntariness
of a defendant's statements are raised, even when the state-

---

[2] We do not reach the issue whether, in this case, there was sufficient
evidence that the defendant's statements were involuntary to require a voir
dire examination. Cf. *Commonwealth* v. *Doucette,* 391 Mass. 443, 448
(1984); *Commonwealth* v. *Brady,* 380 Mass. 44, 51 (1980).

The defendant does not argue that a voir dire in this case was mandated
by the Federal or the State Constitution. We do not intimate that there
would be merit to such an argument.

ments are made to private citizens." However, we do not think those decisions clearly foreshadowed the rule announced in *Allen.* Prior to *Allen,* the voluntariness of statements made to private parties was only implicated where there was evidence of coercion. See, e.g., *Commonwealth* v. *Vazquez,* 387 Mass. 96, 100-102 (1982); *Commonwealth* v. *Mahnke,* 368 Mass. 662, 680-681 (1975), cert. denied, 425 U.S. 959 (1976). On several occasions prior to *Allen,* we expressly left open the question whether uncoerced statements made to private persons required a voir dire, indicating that the reasoning applied to coerced statements did not necessarily extend to uncoerced statements. See *Commonwealth* v. *Paszko,* 391 Mass. 164, 177 (1984) (decided after the trial in this case); *Commonwealth* v. *Vazquez, supra* at 101 n.9; *Commonwealth* v. *Brady,* 380 Mass. 44, 50 n.2. (1980). Therefore, we conclude that *Allen* announced a new rule, not clearly foreshadowed by prior decisions.

Having determined that *Allen* announced a new rule, we turn to the second part of the test to decide whether *Allen* is to be applied retroactively. This inquiry requires consideration of three criteria: "(a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards." *Commonwealth* v. *Breese, supra* at 548, quoting *Stovall* v. *Denno,* 388 U.S. 293, 297 (1967). "The threshold question in this case is whether the major purpose of the rule . . . was to overcome an aspect of the criminal trial that substantially impaired its truth-finding function and so raises serious questions about the accuracy of guilty verdicts in past trials." *Commonwealth* v. *Breese, supra* at 549. See *Commonwealth* v. *Paszko, supra* at 180.

In *Commonwealth* v. *Paszko, supra* at 179, this court gave only prospective effect to the decision in *Commonwealth* v. *Tavares,* 385 Mass. 140, 150, cert. denied, 457 U.S. 1137 (1982), which "extended the applicability of the humane practice to admissions as well as full confessions." In *Paszko,* we reasoned that admissions do not have the evidentiary impact or importance of full confessions, and that the requirement of

independent evidence of guilt diminishes the risk that the accuracy of the conviction is threatened. *Id.* at 181. "Because of this diminished likelihood of erroneous verdicts, constitutionally mandated inquiries into voluntariness have not been held applicable to admissions." *Id.,* citing *Stein* v. *New York,* 346 U.S. 156, 162-163 n.5 (1953), overruled on other grounds, *Jackson* v. *Denno,* 378 U.S. 368, 391 (1964), *United States* v. *Tarr,* 589 F.2d 55, 62 (1st Cir. 1978).

In this case, as in *Paszko, supra* at 181-182, "we are not persuaded that the likelihood of erroneous verdicts in past cases is such as to outweigh other factors counseling against retroactive application." We think that judges reasonably relied on the emphasis on coercion in prior cases in declining to conduct voir dire examinations where uncoerced statements were made to private persons. Cf. *Colorado* v. *Connelly,* 479 U.S. 157, 167 (1986) (due process clause of United States Constitution not violated by admission in evidence of confession unless causally connected to police misconduct). "In addition, although we cannot predict how many defendants convicted before [*Allen*] . . . would seek to attack their convictions . . . we are confident that the number of such attacks and resulting appeals and retrials would be enough to burden substantially the administration of criminal justice in the Commonwealth." *Commonwealth* v. *Breese, supra* at 550. Therefore, we conclude that *Allen* will not be applied retroactively.

2. The defendant also contends that the judge was required, sua sponte, to conduct a voir dire examination to determine the voluntariness of the defendant's statements to Adi Ogden. While we doubt that there was sufficient evidence to raise the issue of voluntariness, see *Commonwealth* v. *Brady, supra* at 51, we need not reach that issue in light of our conclusion that *Allen* is not to be applied retroactively. Therefore, there was no error.

3. The defendant argues that the judge erred in failing to instruct the jury that intoxication may render a statement involuntary. The defendant did not object to the judge's instructions, nor did he request further instructions on this issue. Therefore, the standard of review is whether the jury charge

was so erroneous that it created a 'substantial risk of a miscarriage of justice.' " *Commonwealth* v. *Murray,* 396 Mass. 702, 705 (1986), quoting *Commonwealth* v. *Pickles,* 393 Mass. 775, 776 (1985), and *Commonwealth* v. *Freeman,* 352 Mass. 556, 563-564 (1967).

We have never stated that, in the circumstances shown here, where there was no coercion and no police involvement, the judge was required to submit the issue of voluntariness to the jury. The defendant can derive no support from language in *Allen, supra,* since we have concluded that *Allen* will not be applied retroactively. The defendant was helped rather than hurt by the judge's decision to submit the issue of voluntariness to the jury. Even assuming that the judge was required to submit the issue of voluntariness to the jury, we conclude that there was no substantial likelihood of a miscarriage of justice from the fact that the judge did not specifically state in his instructions that intoxication could render the defendant's statements involuntary. Defense counsel fully cross-examined the witnesses concerning the defendant's state of mind when he made the statements, and argued the issue in his closing argument. We conclude that there is no substantial risk of a miscarriage of justice.

4. The defendant asserts that the judge erred in admitting in evidence a mugshot of the defendant, and eighteen color photographs of the victim's body. The admissibility of photographic evidence is left to the discretion of the trial judge, and we will overturn the judge's decision only where a defendant is able to bear the heavy burden of demonstrating an abuse of that discretion. *Commonwealth* v. *Medeiros,* 395 Mass. 336, 351 (1985). The mugshot had been completely sanitized, showing the defendant from the shoulders up, in street clothes, and was not immediately recognizable as a mugshot. The photograph was admitted to aid a witness who had difficulty identifying the defendant in the courtroom. Finally, the defendant would not have been prejudiced even if the jury had concluded the photograph was a mugshot. The jury knew that the defendant had been arrested for the crime being tried, and, in addition, defense counsel had stated to the jury and presented evidence that the defendant had previously been arrested for

assaulting a police officer. See *Commonwealth* v. *Blaney,* 387 Mass. 628, 639-640 (1982).

The judge carefully reviewed the photographs of the victim, excluding several which were repetitious. The photographs were clearly relevant to whether the murder was committed with extreme atrocity or cruelty, which was at issue. See *Commonwealth* v. *Sielicki,* 391 Mass. 377, 382 (1984). We have examined the photographs, and conclude that the judge did not abuse his discretion in admitting either the mugshot or the photographs of the victim.

5. In his motion for a new trial, the defendant asserted that he had been denied his constitutional right to testify. The judge denied the motion. The defendant argues that it is not clear beyond a reasonable doubt that the defendant voluntarily, knowingly, and intelligently waived his right to testify, and that, therefore, the judge erred in denying his motion for a new trial. We disagree, and conclude that there was no error.

We agree that the defendant has a right to testify in his own behalf. See *Harris* v. *New York,* 401 U.S. 222, 225 (1971); *Commonwealth* v. *Hennessey,* 23 Mass. App. Ct. 384, 386 (1987). A strict standard applies to the waiver of basic rights. *Schneckloth* v. *Bustamonte,* 412 U.S. 218, 241 (1973). *Commonwealth* v. *Hennessey, supra* at 387.

Unlike most other rights, the right to testify is counterpoised by the right not to testify. Therefore, the exercise of one right is the waiver of the other. The decision whether to testify, ultimately the defendant's decision, is an important strategic decision made by the defendant with the advice of counsel. Often, the decision is made only as the trial unfolds. We do not think that the right to testify would be protected by requiring the judge to conduct a voir dire examination. Not only would the proper point at the trial to conduct the voir dire be uncertain, but the judge's role in this strategic decision would be problematic; to the extent the judge appeared to urge the defendant to exercise the right to testify, the judge would appear to urge the defendant to waive the right not to testify. See *Common-*

*wealth* v. *Hennessey, supra* at 389-390.[3] We conclude that a voir dire was not required.

In this case, the judge was warranted in finding that the defendant knew he had a right to testify. Before trial, the defendant moved for a polygraph examination, and a judge found that "the defendant understands that the results of the [polygraph] examination will be admissible to impeach or corroborate his testimony should he testify in his own behalf at trial." At trial, the judge discussed with the defendant his right to decide whether the jury should be instructed concerning his failure to testify. In addition, the judge found that the defendant, who was "quite familiar with our system of criminal justice," never indicated a desire to testify or any conflict with his counsel. See *United States* v. *Systems Architects, Inc.,* 757 F.2d 373, 375-376 (1st Cir.), cert. denied, 474 U.S. 847 (1985); *Commonwealth* v. *Hennessey, supra* at 387. There was no error.

6. The defendant urges that the judge erred in denying his motion for a new trial on several other grounds. We deal with these arguments briefly.

Perry testified that she and the defendant had been drinking when the defendant made the inculpatory statements, but that she "didn't have difficulty understanding him." At the hearing on the defendant's motion for a new trial, Perry testified that she had been "plastered" and that a police officer had told her not to use the word "plastered." Officer Nancy Taylor testified that Perry had used the word "high," and that she suggested that Perry use "very drunk" instead, because "high" implied the use of controlled substances rather than alcohol. The defendant argues that Perry's use of "drinking" or "drunk" rather than "plastered" conveyed a false impression, requiring a new trial. We disagree. Not only were Perry's terms accurate, but

---

[3] It may be the better practice for a judge to inform a defendant before trial of the right to testify and the right not to testify; that the decision, although made in consultation with counsel, is ultimately the defendant's own; and that the court will protect the defendant's decision. See *Commonwealth* v. *Siciliano,* 19 Mass. App. Ct. 918, 921 (1984).

also defense counsel fully cross-examined her on the degree of her intoxication.

The defendant next contends that a new trial was required because the Commonwealth failed to disclose "exculpatory" evidence that the victim's husband had been seen in town on the morning of the murder. Officer Taylor testified at the motion hearing that the victim's husband may have stopped in Ayer to have a tire repaired and to go to the post office as part of his work duties. This was not inconsistent with the husband's testimony at trial that he had been at work that morning. The motion judge did not err in finding that the defendant was not denied material evidence.

Finally, the defendant argues that the judge erred in denying his motion for a new trial on the ground of newly discovered evidence. The defendant claims that he worked a double shift on May 20-21, 1980. The time cards for that week were missing. After trial, the defendant produced accounting records which showed that he worked fifty-five and one-half hours that week, which is consistent with his having worked a double shift. We conclude that the judge was warranted in denying the motion, finding that this evidence "does not justify a new trial. . . . It is [also] consistent with a double shift on any other day of that week or the working of a sixth day." There was no error.

7. We have reviewed the entire record on the law and on the evidence, and find no occasion to grant relief under G. L. c. 278, § 33E.

*Judgments affirmed.*