## COMMONWEALTH *vs.* DWAYNE MOORE.

No. 98-P-820.

Suffolk. January 13, 2000. - July 23, 2001.

Present: ARMSTRONG, C.J. SMITH, & BROWN, JJ.

*Practice, Criminal,* Defendant's decision not to testify, Instructions to jury, Jury and jurors, New trial. *Jury and Jurors.*

At a murder trial, the judge did not abuse his discretion in refusing to reopen the case after the Commonwealth and defendant had rested, in order to allow the defendant to testify, where, in raising this issue in his motion for a new trial, the defendant made no proffer as to what his testimony would have been if he had been allowed to testify in the matter. [122-127]

This court was unable to review a defendant's contention that the judge at his murder trial had erred in suggesting through the inflection of his voice that self-defense was not a legitimate claim, where the transcript did not disclose the tone or inflection of the judge's voice; and, furthermore, this court suggested that, in the future, trial judges inform the jury specifically that they are not to listen to voice inflections with the purpose of trying to ascertain the judge's thoughts as to a possible verdict. [127-129]

At a murder trial, the judge did not abuse his discretion in discharging a deliberating juror, where the judge adhered to the procedural safeguards outlined in *Commonwealth* v. *Connor*, 392 Mass. 838, 843-846 (1984), and the record supported the judge's finding that the juror's reasons for not continuing further in the jury deliberations were entirely personal and had nothing to do with the other jurors. [129]

The judge at a murder trial did not abuse his discretion in denying the defendant's motion for a new trial on the basis of the judge's refusal to allow the defendant to testify and issues regarding the inflection of the judge's voice in instructing the jury. [129]

INDICTMENT found and returned in the Superior Court Department on September 28, 1995.

The case was tried before *Thomas E. Connolly*, J., and a motion for a new trial was heard by him.

*Stephen Neyman* for the defendant.

*Amanda Lovell*, Assistant District Attorney (*John P. Zanini* with her) for the Commonwealth.

SMITH, J. On September 28, 1995, a Suffolk County grand jury returned an indictment against the defendant, Dwayne Moore, charging him with murder in the first degree. After a jury trial, the defendant was found guilty of manslaughter. He was sentenced to fifteen to eighteen years to be served at M.C.I., Cedar Junction.[1]

On September 1, 1998, while his direct appeal was pending, the defendant filed a motion for a new trial. On September 8, 1998, the trial judge denied the motion. On October 5, 1998, the trial judge allowed the defendant's motion for reconsideration of the denial of his motion for a new trial and again denied the motion. This court consolidated the appeals from the orders denying the motion for a new trial with the defendant's direct appeal.

The defendant claims that the trial judge committed error in (1) denying the defendant the right to testify; (2) suggesting through the inflection of his voice that self-defense was not a legitimate claim; (3) giving the jury a written outline of first-degree murder, second-degree murder, and manslaughter without also including an outline of the defendant's theory of self-defense; and (4) improperly discharging a deliberating juror.

We summarize the Commonwealth's evidence introduced at trial. On August 11, 1995, at approximately 10:30 P.M., two Boston police officers were dispatched to Arborcrest Terrace in the Mattapan section of Boston. Upon arrival, the officers were directed to a driveway where they found the victim, Keema Braxton, lying on his back with blood on him. The victim had a five-inch deep knife wound in his neck, likely the fatal blow. The victim also had two other stab wounds, six small cuts on his right hand, a laceration on his right forehead, and seventeen separate abrasions on his body.

At the trial, several witnesses gave accounts of the incident. On the night in question, Ascer Barlatier hosted a party at his home at 22 Arborcrest Terrace. The victim arrived at the party before the defendant. When the defendant arrived, Barlatier attempted to settle an existing dispute between the victim and the defendant. The victim and the defendant shook hands and went

---

[1]The appellate division of the Superior Court later reduced the defendant's sentence to ten to fifteen years.

outside where an argument ensued. The victim did not want to fight and appeared to be frightened.

The defendant then pushed the victim and the two fought in front of Barlatier's house. While they were wrestling, the victim took out a knife. The defendant grabbed the hand in which the victim held the knife. The victim then fell to the ground where the defendant and another individual, Fillmore Parris,[2] repeatedly punched and kicked the victim. Barlatier tried to stop the fight by grabbing the defendant, but the defendant continued the beating. Barlatier noticed that the defendant was bleeding from his back.

The victim got up and ran toward a fence. He tried to climb over the fence but the defendant pulled him back down. The defendant then grabbed the knife out of the victim's hand and stabbed the victim in the area of the neck, either once or twice. While the victim was on the ground, the defendant and Parris again repeatedly kicked him. The defendant left the scene and Barlatier, who was looking for the victim, found the defendant about two streets away. The defendant then ran off when he saw a police cruiser approaching.

Jasmine Monroe was one of the persons who attended the party. The defendant went to Monroe's home at about midnight. He was cut on his back, his arm, and his finger and also had scratches and bruises on his body. He stayed there for about five hours. The defendant was later arrested and indicted for murder in the first degree.

1. *The judge's refusal to allow the defendant to testify.* The defendant claims that the judge committed error in refusing to allow him to testify.[3] We summarize the undisputed facts in regard to this issue. On the fifth day of the trial, just before the

---

[2]Fillmore Parris was indicted for assault and battery by means of a dangerous weapon. He was tried with the defendant and the jury returned a not guilty verdict.

[3]This alleged error was not preserved for appellate review. The judge, however, did address it in denying the defendant's motion for a new trial. Because the defendant's appeal from that denial is presented in conjunction with his direct appeal and the judge gave the claimed error full consideration in deciding the motion for a new trial, that issue is resurrected and must be considered on appeal as if fully preserved for appellate review. See *Commonwealth* v. *Hallet*, 427 Mass. 552, 555 (1998).

lunch recess, the prosecutor informed the judge that she would not present any more witnesses and that she would rest after the introduction of some records. The judge asked counsel for both defendants whether they would be ready to go forward that afternoon. Counsel for the defendant responded that he did not think he would present any witnesses. The judge then asked whether either defendant was planning to take the stand, assuring both counsel that if the defendants made an election at that time, the judge would allow them to change their minds up to the time that each defendant rested. Counsel for the codefendant replied that she was not planning to call the codefendant to testify.

The judge then advised both defense counsel that he planned to engage in a colloquy with the defendant and codefendant about their right to testify and he wanted to conduct the colloquy before the lunch recess. The judge told both defense counsel and the defendants that, while he was sure that both defense counsel and the defendants had had many discussions about whether they should testify, he wanted the record to show that the defendant and codefendant did indeed understand their rights as to whether or not to testify. The judge added that the colloquy would prevent any postconviction motion in which either defendant would claim that he was not aware of those rights.[4]

Counsel for the defendant responded that he did not expect the defendant to testify but asked the judge to postpone his colloquy with the defendant until after the lunch recess. The judge replied, "You'll get a chance to chat. I'd be happy to do it."

After the lunch recess, the judge engaged in the colloquy with the defendant. The judge informed the defendant that he had a constitutional right to testify and a constitutional right not to testify. The judge then explained that if the defendant decided not to testify, the jury would be instructed "in the strongest terms possible," if defense counsel so requested, that no inference could be drawn from the defendant's failure to testify. The judge then asked the defendant if he understood his rights to

---

[4]In *Commonwealth* v. *Siciliano*, 19 Mass. App. Ct. 918, 921 (1984), quoting from *People* v. *Curtis*, 681 P.2d 504, 511-512 (Colo. 1984), the court stated that "establishing waiver [of the right to testify] in court on the record helps assure that the waiver is effective and facilitates meaningful appellate review."

testify and not to testify. The defendant responded that he understood.

The judge then asked if the defendant had made a decision whether or not to testify. The judge qualified his question by informing the defendant that he did not have to make a decision until "before your counsel rests . . . ." The defendant then stated that he had decided not to testify.[5] There was no objection to the judge engaging in the colloquy with the defendant.

"A criminal defendant must decide whether to testify, as is the defendant's constitutional right, or not to testify, which is also a constitutional right." *Commonwealth* v. *Ramirez*, 407 Mass. 553, 556 (1990). There is no constitutional or statutory requirement that the trial judge engage in a colloquy with the defendant to inform him of his constitutional rights and to ascertain whether a defendant had knowingly relinquished his right to testify. See *Commonwealth* v. *Hennessey*, 23 Mass. App. Ct. 384, 388 (1987). But such a colloquy is not prohibited. See *Commonwealth* v. *Waters*, 399 Mass. 708, 717 n.3 (1987); *Commonwealth* v. *Siciliano*, 19 Mass. App. Ct. at 921; *Commonwealth* v. *Hennessey*, 23 Mass. App. Ct. at 390 n.7.

The colloquy need not be requested by counsel or the defendant; rather, a judge may decide on his or her own that the colloquy may be necessary. See *Commonwealth* v. *Waters*, *supra* at 717 n.3; *Commonwealth* v. *Hennessey*, *supra* at 390 n.7. Here, the colloquy was not requested by defense counsel, but by not objecting to it, he clearly approved of the procedure.[6]

After the defendant decided not to testify, the Commonwealth

---

[5]The judge engaged in a similar colloquy with the codefendant, who also stated he would not testify.

[6]In his motion for a new trial, the defendant claimed that the judge's decision to engage in a colloquy interfered with the attorney-client relationship. There is nothing in the defendant's affidavit accompanying his motion that supports that claim. The defendant also argued that certain language in the colloquy improperly influenced his initial decision not to testify. In particular, the defendant pointed to the judge's statement during the colloquy that if the defendant elected not to testify, the judge would inform the jury "in the strongest terms possible" not to draw any inference from the fact that the defendant did not testify. According to the defendant, the wording was such that it conveyed to him the impression that the judge did not want him to testify. We do not agree. The cited language is nothing more than an explanation of an instruction that the judge would give to the jury, provided the defendant so requested it, if he decided not to testify. We do not see anything

then rested. The defendant filed a motion for a required finding of not guilty which was denied. The codefendant played a tape recording of a 911 telephone call and then rested. The defendant rested immediately thereafter. The judge then adjourned the trial to the following morning for closing arguments of counsel and the judge's instructions to the jury.

The following morning, defense counsel informed the judge that "thirty seconds ago when my client entered the courtroom, he said 'I want to testify.' I told him it was too late." The judge denied the defendant's request to testify, stating that the request had come too late as the defendant had rested. There was no objection to the denial of the defendant's request.

The defendant claims that the judge abused his discretion in refusing to allow the defendant to testify in his defense. He also contends that his trial counsel was constitutionally ineffective for failing to object to the judge's denial of his right to testify.

There is no question that "[a] criminal defendant has a fundamental right to testify on his own behalf." *Commonwealth* v. *Freeman*, 29 Mass. App. Ct. 635, 639 (1990), citing *Rock* v. *Arkansas*, 483 U.S. 44, 49-53 (1987). That right arises from several sources in the United States Constitution, including the due process clause of the Fourteenth Amendment, the compulsory process clause of the Sixth Amendment, which grants a defendant the right to call "witnesses in his favor," and the Fifth Amendment's guarantee against compelled testimony. See *Commonwealth* v. *Freeman*, 29 Mass. App. Ct. at 639-640.

in the language that would even remotely suggest that the trial judge, for some reason, did not want the defendant to testify. We note there is some risk in engaging in such a colloquy. For example, "[t]here is a risk that in explicating the right to testify the judge will cast in unflattering light the right not to testify." *Commonwealth* v. *Hennessey*, 23 Mass. App. Ct. 384, 390 (1987). That did not occur here, but caution should be used in engaging in the colloquy, especially if not requested by defense counsel. If a judge decides to engage in such a procedure, one approach has received the approval of the Supreme Judicial Court. In *Commonwealth* v. *Waters*, 399 Mass. 708 (1987), the court stated that if a trial judge decides to engage in a colloquy, "[i]t may be the better practice for a judge to inform a defendant before trial of the right to testify and the right not to testify; that the decision, although made in consultation with counsel, is ultimately the defendant's own; and that the court will protect the defendant's decision." *Commonwealth* v. *Waters*, 399 Mass. at 717 n.3.

The right to testify, however, is not without limitation because it "may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." *Commonwealth* v. *Pennellatore*, 392 Mass. 382, 388 (1984), quoting from *Chambers* v. *Mississippi*, 410 U.S. 284, 295 (1973).

"The state has a strong interest in maintaining a stable, predictable trial format with a definite end as well as a beginning." *Blaikie* v. *Callahan*, 691 F.2d 64, 67 (1st Cir. 1982). Therefore, "[i]t is within the sound discretion of the judge to admit material evidence offered by a party after he has rested." *Commonwealth* v. *Shine*, 398 Mass. 641, 656 (1986). In order to determine if there was error in the refusal to allow the defendant to reopen the case and allow him to testify, "it must be shown that the proffered evidence was of such importance to the achievement of a just result that the need for admitting it overrides the presumption favoring enforcement of the state's usual trial procedures." *Blaikie* v. *Callahan*, 691 F.2d at 68.

In raising this issue in his motion for a new trial, the defendant made no proffer as to what his testimony would have been if he was allowed to testify in the matter. Therefore, we have no way of judging the importance of the missing testimony in relation to a just result.[7]

We add that the defendant was advised by the judge that he could change his mind up to the time that he rested his case. Thus, the defendant was well aware of the time constraints before he changed his mind.

We also add that the decision whether to reopen a case is one that cannot be made in an arbitrary or capricious manner. It would be a wise practice in the future for trial judges to place

---

[7]The defendant made an unsworn statement at his sentencing hearing, claiming that, on the evening in question, he was forced to fight by someone else, that he and the victim agreed to fight, and that he did not stab the victim. Obviously, this statement came too late to be of use by the trial judge in considering the defendant's request to reopen the case.

Further, trial counsel's theory at trial was that the defendant had acted in self-defense. Thus, even had the defendant made the proffer to the trial judge at the appropriate time, it is extremely doubtful that even if the defendant was allowed to testify, it would have benefited his case. This is especially true in view of the overwhelming and uncontradicted testimony of several witnesses that the defendant did indeed stab the victim several times.

on the record their reasons for exercising their discretion either for or against reopening the case.[8]

2. *The voice inflection issue.* During his main charge, the judge instructed the jury on the elements of first-degree murder by deliberate premeditation and extreme atrocity and cruelty, second-degree murder, voluntary manslaughter, and assault and battery by means of a dangerous weapon. He also instructed the jury on self-defense.

After the jury began to deliberate, it requested "Please define in writing malice aforethought and premeditation or, in the alternative, can we have a brief outline in writing of the various degrees of each charge . . . ."

The judge told the jury that he had discussed the question with counsel and had decided to repeat the entire charge again. The judge then repeated the entire charge, including self-defense. In addition, the judge gave to the jurors a written outline of the elements of various crimes. He did not include a definition of self-defense. There was no objection.[9]

The next morning, the jury asked to hear the definition of self-defense again. The judge gave an instruction which was in all material respects identical to the instructions he had twice previously given.

Following the instruction, defense counsel stated that the judge's presentation and voice inflection "indicated to the jury that you did not believe that a self defense was . . . ." The judge interrupted and said that he had given the instruction in a loud voice and that it was loud "all through including the parts

---

[8]The defendant, as indicated earlier, also claims that his trial counsel was ineffective for not objecting to the judge's refusal to allow him to testify. It is clear from the hearing on the defendant's motion for a new trial that, even if trial counsel had objected to the judge's refusal, the judge would still not have let the defendant testify.

[9]On appeal, the defendant claims reversible error in the failure of the judge to include a definition of self-defense.

Assuming that the omission was error, it did not create a substantial risk of miscarriage of justice. The judge's supplemental instruction as well as his main charge had specifically advised the jury about the definition of self-defense. See *Commonwealth* v. *Dilone*, 385 Mass. 281, 288 (1982) (failure to list defense of accident on a chart judge gave to the jury not reversible error where the defendant did not object and the charge explicitly advised the jury that if the death was accidental, it would be a lawful homicide).

of that charge that were favorable to you. I gave them loud and clear."

The prosecutor stated that the jurors had asked the judge to "speak up," and that the judge had told the jurors twice in a loud tone of voice that the burden was on the Commonwealth. Defense counsel stated, "Different degrees of loudness." The judge then asked counsel for the codefendant what she thought about the charge. She objected to the wording of the defense of others instruction but did not mention the judge's voice inflection. The judge overruled the defendant's objection.

In his motion for a new trial, the defendant again raised the voice inflection issue. He filed with his motion portions of transcripts of three criminal trials, and an affidavit from an attorney from a fourth trial, in which defense counsel had objected to the same trial judge's voice inflection. In denying the motion, the judge found that the supplemental charge "was given in a loud manner (because one of the jurors indicated that she could not hear the Court) but was not given in any inflected manner prejudicial to the defendant."

Although we may review the contents of the instructions to the jury, it is, as a practical matter, impossible for us to review voice inflection claims because the transcript does not disclose the tone or inflection of the judge's voice.[10] In hindsight, it would have been wise once the objection was lodged, for the judge to instruct the jury that they were not to consider the tone or inflection of his voice in reaching a verdict.[11]

We do not expect trial judges to give their instructions to the jury in a monotone. It is normal behavior for a judge to vary the inflection of his or her voice during the course of the final instructions to the jury. However, a seemingly innocent voice inflection may give the jury a wrong impression, i.e., that the judge is partial, one way or the other. Therefore, trial judges

---

[10]We note, however, that counsel for the codefendant did not object to the judge's voice inflection and her interest in the matter was the same as that of the defendant.

[11]We note that the judge did inform the jury at the beginning of his instructions that, "If I have said or done anything to cause you to believe I have any opinion concerning the facts in this case, then you are mistaken because I am totally neutral on this issue." That comment, however, did not say anything about tone or voice inflection.

"must remain ever vigilant in order to avoid conveying any idea as to what he thinks the jury's verdict should be or suggesting the slightest partiality." *State* v. *Hutchinson*, 287 Md. 198, 206 (1980).

In order to prevent this issue from arising again, we suggest that trial judges inform the jury specifically that they are not to listen to the judge's voice inflections with the purpose of trying to ascertain the judge's thoughts as to a possible verdict.

3. *Discharge of deliberating juror.* On the morning after the jury began deliberating, a juror told a court officer "that she [could] not go on any longer, that it [went] against her beliefs."

In the presence of the defendant and his counsel, the judge conducted a voir dire of the juror. The juror told the judge that she could not remain as a juror because she didn't "feel right making a decision on someone's life and that's all and that is it." The juror specifically denied that her decision had to do with her relationship with the other jurors, but it was personal to herself because of her religion.

As a result of her responses to his questions, the judge specifically found that the juror's reasons for not continuing further in the jury deliberations were entirely personal and had nothing to do with the other jurors and dismissed her. The defendant objected to the juror's removal. The judge adhered to the procedural safeguards outlined in *Commonwealth* v. *Connor*, 392 Mass. 838, 843-846 (1984). Further, we are satisfied that the record supports the judge's findings. Therefore, the judge did not abuse his discretion in discharging the juror.

4. *Denial of the motion for a new trial.* The defendant argues that the judge committed error in denying his motion for a new trial based on the judge's refusal to allow the defendant to testify and the issue regarding the inflection of his voice.

For the reasons explained in our discussion of those issues, we hold that the judge did not abuse his discretion in denying the defendant's motion for a new trial.

*Judgment affirmed.*

*Orders denying motion for new trial affirmed.*