Commonwealth *v.* Olavarria.

COMMONWEALTH *vs.* MIGUEL A. OLAVARRIA.

No. 06-P-990.

Berkshire. February 12, 2008. - April 28, 2008.

Present: RAPOZA, C.J., DREBEN, & WOLOHOJIAN, JJ.

*Jury and Jurors. Practice, Criminal,* Jury and jurors, Investigation of jurors, Deliberation of jury, Assistance of counsel. *Evidence,* Identification.

During deadlocked jury deliberations at a criminal trial, the judge acted within his discretion and in accordance with required procedures when discharging the lone hold-out juror, who had brought extraneous material to the jury room, where there was nothing in the record to suggest that the reason for the dismissal was the juror's hold-out status; where the judge's determination of the juror's inability to perform her functions as a juror was supported by facts in the record; and where the judge questioned the remaining jurors as to their ability to disregard the extraneous material and to follow the law as he gave it to them [618-622]; further, the judge did not err in declining to declare a mistrial pursuant to G. L. c. 234, § 34, on the ground that the original jury had twice claimed that they were at an impasse, where that statute did not apply to the new jury, as reconstituted with the addition of an alternate [622].

A criminal defendant demonstrated no risk of a miscarriage of justice arising from his trial counsel's failure to introduce certain allegedly exculpatory identification evidence [622-623]; to object to testimony regarding the show-up identifications involving the defendant [623]; to seek discovery of evidence of speculative weight [623]; or to request an honest but mistaken identification instruction [623-624].

INDICTMENTS found and returned in the Superior Court Department on December 16, 2004.

The cases were tried before *Daniel A. Ford,* J., and a motion for a new trial, filed on November 2, 2006, was also heard by him.

*Jeremia A. Pollard* for the defendant.

*Karen L. Carlo,* Assistant District Attorney, for the Commonwealth.

DREBEN, J. On a cold and rainy November night in 2004, at

approximately 11:30 P.M., a man wielding a knife entered a Cumberland Farms convenience store in Pittsfield. The man demanded money from the cashier and, when a second employee entered the store a few minutes later, stabbed the latter. The defendant was convicted of armed assault with intent to rob (G. L. c. 265, § 18[*b*]), and assault and battery by means of a dangerous weapon (G. L. c. 256, § 15A[*b*]). Before us are his direct appeal from the judgments and his appeal from the denial of his motion for a new trial. The two appeals were consolidated.

The defendant claims that the judge erred in not declaring a mistrial on a second return of a deadlocked jury, see G. L. c. 234, § 34, and erred by discharging the lone hold-out juror, who had brought to the jury room legal definitions of the terms "reasonable doubt" and "moral certainty." The defendant also argues, laying stress on the fact that in this case there were no positive identifications by the witnesses, that he was entitled to a new trial because his counsel was ineffective by failing, among other things, to introduce exculpatory evidence as to the mustache of the assailant, to move to suppress the partial identifications as being unnecessarily suggestive, and to request an honest but mistaken identification instruction. We affirm the convictions and the denial of the motion for a new trial.

1. *Background.* In addition to the facts previously recounted, the evidence viewed in the light most favorable to the Commonwealth included the following. The man entering the Cumberland Farms store on November 20, 2004, was of small build, about five feet, one inch to five feet, four inches tall, and had dark hair, a tan, a little mustache, and an accent described as "Spanish" or "something like that." He wore a multicolored flannel plaid shirt, with a dark shirt underneath pulled up to cover the lower part of his face. After he entered the store, he demanded money and swung a knife at the cashier, Brian Provencher. He also attempted unsuccessfully to remove the cash register from the counter. During the scuffle, another Cumberland Farms employee, Robert Ryan, returned to the store and pulled the man by the neck, but retreated after he was stabbed superficially several times. The man fled. There were two customers in the store at the time of the attempted robbery, and a surveillance camera recorded the incident on videotape.

Provencher called the police as soon as the man left. Pittsfield police officers received a report that a man in a plaid shirt had attempted to rob the Cumberland Farms store and had fled in the direction of Melville Street. Although the defendant was the only person seen by a police officer walking in that direction, he was not immediately taken into custody because he was wearing baggy grey sweatpants and a short-sleeved black T-shirt — not the clothing described in the report. His shoes were untied. Soon thereafter, however, police stopped him at a nearby street corner.

Within fifteen minutes of the incident, the two store employees and one of the store's customers were brought (individually) to the corner where the defendant was standing next to police officers. It was still raining. Each of the witnesses observed the defendant from the back seat of a police cruiser across the street from the defendant. While none of the three could identify the defendant — none had seen his full face at the store — each testified that the height, hair color, and skin tone[1] matched that of the would-be robber.[2]

The clothing and the knife that had been discarded by the would-be robber were soon found nearby, and all three of the witnesses identified the clothing as that worn by the intruder. The two store employees stated that the knife was like the one wielded by the robber. Each of the witnesses identified the man seen on the street corner as the defendant at trial.

The surveillance videotape that recorded the incident was shown to the jury. Although the videotape did not show the would-be robber's face, it pictured his shoes. The shoes the defendant was wearing at the time of his arrest were an exhibit at trial.

2. *Jury deliberations and discharge of deliberating juror.* The case was submitted to the jury at 10:46 A.M. on January 25, 2006.[3] At 2:45 P.M., the jury sent the judge a note stating:

> "Sir, we are making no progress. We are completely divided. What do we do now?"

---

[1] The two employees also mentioned that the defendant's build matched that of the would-be robber.

[2] Provencher also saw that the man he viewed on the corner had a mustache.

[3] At 11:10 A.M. the jury sent the judge a note requesting the surveillance videotape, the defendant's booking tape, and "magnification of shoes." (One copy of the videotape contained a magnification of the shoes.)

The judge sent the note back, asking the jury to

> "give the evidence due and thorough consideration and continue to attempt to reach a unanimous verdict on both indictments."

At 4:15 P.M., the jury sent another note to the judge explaining that they had "continued to thoughtfully deliberate. We have evaluated all reliable evidence and yet have not reached a unanimous verdict. We are currently deadlocked at 11 to one."[4] After conferring with counsel, the judge told counsel he would recess for the evening and give the *Tuey-Rodriquez* charge in the morning.[5] Before sending the jury home, he called them into the court room and instructed them to have no contact with any of the persons involved in the case, not to take any private views of the place about which they had heard testimony, to avoid and ignore any media coverage of the case, and not to discuss the case with anyone, including jurors, during this or any other recess. The judge did not specifically tell the jurors not to do any legal research during the overnight recess. He had, however, begun his charge by saying that the jury "must accept the entire body of law that I am now about to give to you."

The next morning, the judge gave the jury the *Tuey-Rodriquez* charge. After the jury resumed deliberations, they sent the following note to the judge:

> "We have two potential problems. First a juror looked up in 3 law dictionaries the definition of 'reasonable doubt' & 'moral certainty' & brought it into the room. Whether as a result or not she is in complete disagreement with the other eleven jurors. Nothing has changed since yesterday. She says she will not change her mind. What now?"

Defense counsel immediately moved for a mistrial, stating that the jury had been "hopelessly compromised." The judge, however, pointed out that the jury were saying two things: not

---

[4]The judge did not read into the record the last phrase "at 11 to one."

[5]See *Commonwealth* v. *Tuey*, 8 Cush. 1, 2-3 (1851); *Commonwealth* v. *Rodriquez*, 364 Mass. 87, 101-102 (1973).

only that they were deadlocked,[6] but also that extraneous information had been brought into the deliberations. Counsel reluctantly conceded that the juror could be questioned as to what she had done. When questioned, the juror explained that as she was the widow of a lawyer, she had access to law books,[7] she "did not realize [she] was violating" his instructions, and she had "difficulty recalling [his] instruction and the definition of reasonable doubt." She further stated that "[b]ecause [she] was struggling with [her] decision, [she] needed to — refresh [her] memory of what reasonable doubt is . . . ." After this explanation, the juror was sent out of the court room, but not to the jury room. When the judge consulted with counsel, defense counsel indicated that it would prejudice his client to have another juror brought in with eleven jurors who already had made up their minds.

The juror was brought back into the court room. The judge told her that some of the law she brought in was "absolutely wrong." The judge's additional inquiry, set forth in the margin, ensued.[8]

---

[6]The judge indicated that if only a deadlock were involved, the jurors would have to be asked if they all agreed to continue their deliberations. Otherwise he agreed with defense counsel that a mistrial would be required by G. L. c. 234, § 34. That statute provides: "If a jury, after due and thorough deliberation, return to court without having agreed on a verdict, the court may state anew the evidence or any part thereof, explain to them anew the law applicable to the case and send them out for further deliberation; but if they return a second time without having agreed on a verdict, they shall not be sent out again without their own consent, unless they ask from the court some further explanation of the law."

[7]The judge read aloud the definitions the juror had brought into the jury room. The definition of moral certainty included, "A juror is said to be morally certain of a fact when he would act in reliance upon its truth in matters of great importance to himself." Two of the definitions of "reasonable doubt" included a "doubt that would cause prudent people to hesitate before acting in matters of importance to themselves," or words of similar import. In *Commonwealth* v. *Rembiszewski*, 391 Mass. 123, 130-131 (1984), such definitions were held to be incorrect.

[8] JUDGE: "Now I have told you that what you have brought into the jury room is incorrect, not the law of the Commonwealth, I'm going to ask you if you would be able to disregard what you have brought with you today and decide the case based on the law that I gave you yesterday?"

JUROR: "I would certainly make every effort to do that, Your Honor. I had actually wanted to have clarification yesterday and —"

JUDGE: "Well, you could have sent me a note asking me to clarify."

After the discussion, the judge asked the juror to leave the court room and stated:

> "Well, I'm concerned. She says she cannot guarantee that she would be able to decide the case based upon the law as I give it to her. I don't think I have a choice."

The judge told counsel that he intended to ask the jurors indi-

---

JUROR: "I wanted to do that, but I was overruled, Your Honor. I'm truly sorry. I really was doing it in an honest effort to clarify for myself."

JUDGE: "I don't doubt your sincerity and your good faith. I don't doubt that for a minute, so don't be upset. I'm not going to get mad at you. Don't worry about that. I'm simply trying to do the job that I have to do. So the question I have again is if you remain on this jury, would you be able to disregard what you brought here this morning and decide the case based upon the law as I have given it to you, and I will give it to you again if you want."

JUROR: "I believe I would be able to do so. I believe I would be able to do so if you could particularly clarify on what points the definitions are incorrect according to the law of the Commonwealth. Is there something specific that I would need to know?"

JUDGE: "No. I cannot go through this and point out sentence by sentence what is incorrect about it. I'm telling you that it is not correct. Parts of it may be essentially correct, but parts of it are not. So you have to decide the case based upon the law as the judge gives it to you, and I'm going to repeat the definition of reasonable doubt. So my question is can you decide the case based upon the law as I gave it to you, or do you think you're going to be affected by what you've done on your own here?"

JUROR: "I don't know how to answer that with perfect honesty, Your Honor. I really don't. I would like to think that I can completely put that out of my mind, but some of those things are some things I had known before, of course, having lived with a lawyer and consorted with lawyers anyway. So these are points that have been part of my thoughts about it, and I thought they reflected what you had instructed us. But clearly if you re-defined it for me, I might be able to see where that differs and try my best to disregard anything that does not conform with that. But I don't know that I can honestly answer that."

JUDGE: "It sounds like you're saying to me that you cannot assure me that you can decide the case based upon the law as I give it to you; is that correct?"

JUROR: "All I can assure you is that I would make every effort to do so, but I don't know that I can answer for other things that might be in my head. I would make every sincere effort to do so, but I cannot say that I could guarantee that. I don't know how . . . ."

vidually whether they could disregard what they were told by the errant juror and could decide the case on the law. If all answered "yes," he would excuse the juror, replace her with an alternate, and then reinstruct the jury on reasonable doubt. The judge then spoke to each juror, asking each, among other things, the following question or in words of similar import:

> "Would you be able, do you think, to disregard what this juror told you about the law and decide the case based upon what I tell you the law is?"

Each juror answered in the affirmative.

Although the Commonwealth agreed with the judge's proposed procedure, defense counsel "for the record" objected to "both the jury questioning process as well as the denial of a mistrial." He stated that the questioning was not thorough, and that the judge should have asked "[w]hether there has been an impact on their deliberations and the impact on their judgment . . . Not their substance, but whether this had any effect." The judge replied that "if they can disregard [the material,] . . . that answers the question."

The errant juror was excused, an alternate was chosen, and the judge reinstructed the new jury. The content of those instructions will be discussed in a later portion of this opinion. The record does not show how long the reconstituted jury deliberated as it does not show the lunch break; the docket shows they started their deliberations at 12:42 P.M. on the third day of trial and were discharged at 2:24 P.M.

The standards for discharging a deliberating juror are set forth in G. L. c. 234, § 26B, and G. L. c. 234A, § 39 (reproduced in relevant part in the margin).[9] See Mass.R.Crim.P. 20(d)(3), 378

---

[9]General Laws c. 234A, § 39, as amended by St. 1984, c. 189, § 158, provides, in relevant part:

> "The court shall have the discretionary authority to dismiss a juror at any time in the best interests of justice. The court shall have authority to excuse and discharge an impanelled juror prior to jury deliberations after a hearing upon a finding of extreme hardship. The court shall have authority to excuse and discharge a juror participating in jury deliberations after a hearing only upon a finding of an emergency or other compelling reason."

General Laws c. 234, § 26B, as amended by St. 1979, c. 344, § 9A, states,

Mass. 891 (1979). Although differing in language, the standards under the two statutes have been considered interchangeable or synonymous, see *Commonwealth* v. *Cousin,* 449 Mass. 809, 821 n.19 (2007), cert. denied, 128 S. Ct. 2053 (2008); *Commonwealth* v. *Rodriguez,* 63 Mass. App. Ct. 660, 673 (2005), and have been construed to permit dismissal "only [for] reasons personal to a juror, having nothing whatever to do with the issues of the case or with the juror's relationship with his fellow jurors." *Commonwealth* v. *Connor,* 392 Mass. 838, 844-845 (1984). "Allowing discharge only for personal reasons ensures that such action will not 'affect the substance or the course of the deliberations.' " *Commonwealth* v. *Swafford,* 441 Mass. 329, 336 (2004), quoting *Commonwealth* v. *Connor, supra* at 845 n.4.

"The discharge of a deliberating juror is a sensitive undertaking and is fraught with potential for error. It is to be done only in special circumstances, and with special precautions." *Commonwealth* v. *Connor,* 392 Mass. at 843. Even greater care should be taken when the jury is at an impasse with a lone dissenting juror. See *Commonwealth* v. *Rodriguez,* 63 Mass. App. Ct. at 675-676, and other cases which specifically note that there is no indication in the record that the jury were at an impasse: *Commonwealth* v. *Leftwich,* 430 Mass. 865, 874 (2000); *Commonwealth* v. *Francis,* 432 Mass. 353, 369 (2000); *Commonwealth* v. *Garrey,* 436 Mass. 422, 431 (2002); *Commonwealth* v. *Swafford,* 441 Mass. at 337; *Commonwealth* v. *Freeman,* 442 Mass. 779, 789 (2004). The reason for special concern in impasse situations with hold-out jurors is that a lone juror, feeling the enormous pressure of being the only dissenting juror, see *United States* v. *Lamb,* 529 F.2d 1153, 1156 (9th Cir. 1975), may seek to evade his responsibilities. *Commonwealth* v. *Connor, supra* at 843. Moreover, if an alternate is chosen, that juror, too, will feel a substantial coercive effect when joining a jury of eleven that had, as in this case, formed their opinions and agreed

in pertinent part:

> "If, at any time after the final submission of the case by the court to the jury and before the jury has agreed on a verdict, a juror dies, or becomes ill, or is unable to perform his duty for any other good cause shown to the court, the court may order him to be discharged . . . ."

upon the guilt (or innocence) of the accused. See *United States* v. *Lamb, supra*; *United States* v. *Phillips*, 664 F.2d 971, 996 (5th Cir. 1981), cert. denied sub nom. *Meinster* v. *United States*, 457 U.S. 1136 (1982), overruled in part on other grounds by *United States* v. *Huntress*, 956 F.2d 1309, 1316 (5th Cir. 1992), cert. denied, 508 U.S. 905 (1993); *People* v. *Roberts*, 214 Ill. 2d 106, 125 (2005).

We consider that the judge acted within his discretion in dismissing the juror in this case and acted in accordance with the procedures required by our cases. See *Commonwealth* v. *Connor, supra* at 846; *Commonwealth* v. *Kamara*, 422 Mass. 614, 616-620 (1996); *Commonwealth* v. *Tennison*, 440 Mass. 553, 557-560 (2003). See also Smith, Criminal Practice and Procedure § 31.76 (3d ed. 2007).

There is nothing in the record to suggest that the reason for the dismissal was the juror's hold-out status. To the contrary, as the judge noted, there were here two problems, the extraneous matter the juror brought to the jury room, as well as the hold-out situation, and it was the former that triggered the juror's dismissal. See *United States* v. *Ginyard*, 444 F.3d 648, 652 (D.C. Cir. 2006) (hold-out juror dismissed for employment reasons; no causal link between hold-out status and dismissal).

In questioning the juror, the trial judge observed her demeanor and concluded that she might not be able to put aside what she had read and follow his instructions as to the law. Consistent with the teaching of our cases, we will not disturb a judge's determination of a juror's ability or inability to perform the functions of a juror where supported by facts in the record. *Commonwealth* v. *Freeman*, 442 Mass. at 789 (distraught juror). *Commonwealth* v. *Moore*, 52 Mass. App. Ct. 120, 129 (2001) (juror said "that she [could] not go on any longer, that it [went] against her beliefs"). See *Commonwealth* v. *Leftwich*, 430 Mass. at 873; *Commonwealth* v. *Francis*, 432 Mass. at 369; *Commonwealth* v. *Zimmerman*, 441 Mass. 146, 150 (2004) (judge did not abuse his discretion in dismissing juror); *Commonwealth* v. *Swafford*, 441 Mass. at 336; *Commonwealth* v. *Peppicelli*, 70 Mass. App. Ct. 87, 93-94 (2007). See also *Commonwealth* v. *Kamara*, 422 Mass. at 620; *Commonwealth* v. *Tennison*, 440 Mass. at 558, 560; *Commonwealth* v. *McCaster*, 46 Mass. App.

Ct. 752, 758 n.12 (1999). Moreover, a judge need not accept a juror's view of whether she can perform her duties. See *Commonwealth* v. *Young*, 401 Mass. 390, 406 (1987).

The judge questioned the remaining jurors as to their ability to disregard the extraneous material and to follow the law as he gave it to them. Because of the importance of not conveying any improper, silent message that he endorsed or approved their view, see *Commonwealth* v. *Connor*, 392 Mass. at 846; *Commonwealth* v. *Zimmerman*, *supra* at 151-152; *Commonwealth* v. *Gonzalez*, 28 Mass. App. Ct. 10, 14-15 (1989), he instructed the new jury, as required by our cases, that the reasons for replacing the juror were "entirely personal to the excused juror and have nothing to do with her views of the case or her relationship with other jurors and you must not speculate or consider for any purpose the reasons why that juror has been excused." See *Commonwealth* v. *Connor*, *supra*. In strong language, as set forth in the margin, he told them they must begin their deliberations anew,[10,11] and he again instructed them on the terms "reasonable doubt" and "moral certainty."

---

[10]"Now, both the Commonwealth and the defendant have the right to a verdict that has been reached with the full participation of all the jurors who return that verdict. And this right will be assured in this case only if the jury begins its deliberations again from the beginning. I, therefore, instruct you to set aside and *to disregard all of your past deliberations and to begin deliberations anew. This means that each of you remaining jurors must put aside and disregard the earlier deliberations just as if they had not taken place."

[11]We note that in a number of cases in which the applicable rules of criminal procedure did not permit withdrawal of a juror, the withdrawal was held not to be prejudicial when the judge, prior to instructing the jury to begin their deliberations anew, engaged in the practice of asking the remaining jurors *individually* whether they could disregard their previous deliberations and begin their deliberations from the beginning. See *United States* v. *Phillips*, 664 F.2d at 996; *United States* v. *Guevara*, 823 F.2d 446, 448 (11th Cir. 1987). Compare *Plate* v. *State*, 925 P.2d 1057, 1061 (Alaska Ct. App. 1996) (failure to question remaining jurors individually if they could begin deliberations anew, among other things, warranted reversal of verdicts returned by reconstituted jury); *People* v. *Burnette*, 775 P.2d 583, 590-591 (Colo. 1989) (same); *Commonwealth* v. *Saunders*, 454 Pa. Super. 561, 569-570 (1996) (same); *State* v. *Lehman*, 108 Wis. 2d 291, 317 (1982) (same).

In a hold-out situation, such as the present, it would be prudent in the future for a judge to take additional precaution, when individually questioning the remaining jurors, by explaining the reason for the need to commence deliberations from the beginning, see, e.g., note 10, *supra*, and by including a

A review of the record shows that the judge was aware of the delicate situation before him and took care to follow the procedures required by our cases. In sum, there was no error in dismissing the juror and appointing an alternate.

There was also no error in not declaring a mistrial because the original jury had twice claimed they were at an impasse. The jury as reconstituted were a new jury, and contrary to the defendant's contention, G. L. c. 234, § 34, see note 6, *supra,* no longer applied.

3. *Denial of motion for a new trial.* The defendant's motion for a new trial was based on several claims of ineffective assistance of counsel.

a. The defendant argues that trial counsel should have brought to the jury's attention a prior statement by Provencher to a police officer. The grand jury minutes and a police report indicate that when Provencher viewed the defendant on the street corner, he told a police officer that the would-be robber had a "busher [*sic*]" mustache than the person he viewed from the police car. At the suggestion of the judge, the Commonwealth obtained an affidavit of trial counsel. That affidavit, however, contained no explanation for counsel's failure to present to the jury Provencher's statement. In the absence of an explanation, the judge inferred that counsel had no tactical or strategic reason for not cross-examining Provencher on this point. The judge, however, then concluded that the defendant had not, as required by *Commonwealth* v. *Saferian,* 366 Mass. 89, 96 (1974), shown that he had been deprived of a substantial ground of defense. In so concluding, the judge carefully set forth the evidence at trial, noting particularly that the distinctive style of shoes (dark with light-colored soles and light-colored stitching) depicted on the surveillance videotape was exactly the same style of the shoes that the defendant was wearing at the time he was stopped. Moreover, at that time the shoes were untied, supporting the inference that the defendant had unlaced his shoes to remove his pants and, being in a hurry to distance himself from the store, did not take the time to lace them up. The judge also listed instances where defense counsel was successful in point-

question whether the juror could begin his or her deliberations anew and could disregard the earlier deliberations.

ing out gaps in the prosecution's case and noted that counsel "strove mightily" to show such weaknesses. Based on what he viewed as strong circumstantial evidence, the judge did not consider that the result would have been different if counsel had cross-examined Provencher about his statement to the police. We agree. There was here no substantial risk of a miscarriage of justice. See *Commonwealth* v. *Curtis*, 417 Mass. 619, 624 n.4 (1994); *Commonwealth* v. *Wilson*, 441 Mass. 390, 400 n.8 (2004). "Where the motion judge was also the trial judge, [he] could rely on [his] familiarity with the facts of the case, as [he] did here, and [his] conclusion is entitled to 'special deference.' " *Commonwealth* v. *Smith*, 449 Mass. 12, 22 (2007), quoting from *Commonwealth* v. *Nieves*, 429 Mass. 763, 771 (1999). *Commonwealth* v. *Morgan*, 449 Mass. 343, 353 (2007).

b. The defendant's claim that counsel was ineffective in not objecting to the identifications at the street corner is without merit. "[S]howups of suspects to eyewitnesses of crimes have been regularly held permissible when conducted by police promptly after the criminal event." *Commonwealth* v. *Martin*, 447 Mass. 274, 280 (2006), quoting from *Commonwealth* v. *Bowden*, 379 Mass. 472, 479 (1980). That the witnesses who saw the would-be robber did not recognize his face does not preclude their identifying other features such as his build, the color of his hair, or his complexion.

c. The claim that counsel was ineffective in failing to seek discovery of "advisements"[12] given to the witnesses concerning identification at showups and in failing to discover that only Provencher, and not the other two witnesses, received them is also without merit. This argument that had the "advisements" been given to counsel, the testimony of these witnesses would have been different, is pure speculation and would likely have been seen by the jury to have no weight. This is especially true as none of the witnesses positively identified the person on the corner as the would-be robber. There was here no substantial risk of a miscarriage of justice.

d. In view of defense counsel's focus on the defense of misidentification throughout the trial, the failure to seek an "honest

---

[12]The police had a list of cautionary notes given to persons asked to identify suspects. These were called "advisements."

but mistaken identification" instruction did not create a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Willard*, 53 Mass. App. Ct. 650, 659-660 (2002).

e. We have examined the defendant's other claims of ineffective assistance of counsel and conclude that whether viewed singly or cumulatively, the defendant has not met his burden of showing ineffective assistance of counsel.

*Judgments affirmed.*

*Order denying motion for new trial affirmed.*