## COMMONWEALTH vs. PEDRO GARCIA, JR.

No. 11-P-831.

Hampden. September 10, 2013. - February 4, 2014.

Present: COHEN, KATZMANN, & AGNES, JJ.

*Jury and Jurors. Practice, Criminal,* Jury and jurors, Deliberation of jury, Substitution of alternate juror.

At a criminal trial, the judge, in discharging a deliberating juror, erred in failing to inform the juror that he could be discharged only if he had a personal problem and in failing to determine that the juror's stated emotional distress resulted from personal issues unrelated to his views on the case or his relationship with his fellow jurors, and these errors resulted in prejudice requiring reversal of the defendant's conviction [765-769]; further, in the circumstances of the case, the judge's error in failing to instruct the jury that the dismissal of the juror had been entirely personal and unrelated to his views about the case or his relationship with the remainder of the jury gave rise to a substantial risk of a miscarriage of justice [769-770].

INDICTMENT found and returned in the Superior Court Department on February 25, 2009.

The case was tried before *Peter A. Velis*, J., and a motion for a new trial, filed on August 30, 2011, was considered by him.

*Ellen A. Jawitz* for the defendant.

*Katherine A. Robertson*, Assistant District Attorney, for the Commonwealth.

COHEN, J. After a Superior Court jury trial, the defendant and a codefendant were found guilty of armed robbery, in violation of G. L. c. 265, § 17.[1] The charges arose from the theft at knifepoint of four dollars and two packages of cigarettes from a resident of a homeless shelter. In this appeal from his conviction, the defendant's sole contention is that the judge's discharge

---

[1]The codefendant is not a party to this appeal.

of a deliberating juror was procedurally defective.[2] We agree that the applicable protocols were not followed, and conclude that reversal is required.

*Background.* On December 17, 2009, at 12:31 P.M., the jury were sent out to begin their deliberations. After the jurors left the court room, the judge was informed that a court officer had observed a juror taking notes during the charge. The juror in question, no. 31 (Juror 31), was brought into the court room. In response to questioning by the judge, Juror 31 acknowledged that he had taken notes during the judge's instructions, explaining that he "didn't think [he] would actually have the chance to remember much of it, and [he] was trying real hard to stay awake." He also stated that, although he had not taken notes while witnesses were actually testifying, he had "jot[ted] down a few things" during breaks. He told the judge that he had not shared his notes with the other jurors and that he had never fallen asleep during the trial. He also said that on the first day of trial, the jury had asked one of the court officers whether they could take notes, but that no one had gotten back to them. He stated that they had discussed how they were "going to remember all these things and the jargon and all that," and said that "I guess we want[ed] to do the best job possibl[e]." He assured the judge that he would not have taken notes if he had been told not to do so.

Juror 31 provided the court with the single sheet of paper that contained his notes. It was marked for identification and reviewed by the judge and the attorneys. The judge observed that the sheet contained some notes about the judge's instructions, a few notes about the evidence, and a note pertaining to personal business. Counsel for both the defendant and the codefendant expressed their views that the note-taking was innocuous and asked that Juror 31 not be excused.

The judge then brought in the entire jury and told them that "one of [their] number" had taken notes during the judge's

---

[2]The defendant's appeal was stayed while he pursued a motion for a new trial in the trial court. The motion was denied, and his appeal from that denial was consolidated with his appeal from the conviction. The defendant states in his brief that he has elected not to pursue on appeal claims raised in the motion for new trial.

instructions and during the course of some testimony. He asked whether any of them had "done anything similar, taken any notes at all," and noted for the record that no one responded in the affirmative. He then asked, "[H]as the individual, and he understands that I'm going to ask this question, has the individual shared with you the contents of any of the notes that he's taken?" After again noting for the record that no one responded in the affirmative, the judge told the jury to resume deliberations.

Sometime after 2:00 P.M., the jury sent the judge a note requesting that certain evidence be clarified.[3] The judge called them into the court room and instructed them that their memory governed. At about 3:50 P.M., the jury sent the judge another note stating, "We the jury have not been able to come to a unanimous decision." The judge spoke with counsel and told them that the deliberations had not gone on long enough to warrant a *"Rodriquez* charge."[4] After discussing whether to let the jury continue to deliberate for a short time or send them home for the day, the judge brought in the jury and told them that, in view of the hour, he would not keep them any longer, and they would resume deliberations the following morning.

When the jury reconvened the next day, the judge asked whether anyone had any problems or concerns about continuing deliberations. No one responded, and they were sent out to deliberate. Less than an hour later, the jury asked a question, "Can we be reminded of the four components of the law we are to apply and how those are to weigh on the verdict?" With counsels' agreement, the judge reinstructed the jury on the four elements of armed robbery and reminded them that they must return a verdict of not guilty if the Commonwealth had not proven each element beyond a reasonable doubt. The jury resumed deliberations at 10:35 A.M.

At 11:30 A.M., the jury sent out another note, "We have a

---

[3]The jury wanted to know who was in possession of what items at the time of apprehension.

[4]The judge was referring to what is often called the *Tuey-Rodriquez* charge, which, in appropriate circumstances, may be given to a jury that has reported deadlock. See *Commonwealth* v. *Tuey*, 8 Cush. 1, 2-3 (1851); *Commonwealth* v. *Rodriquez*, 364 Mass. 87, 101-102 (1973).

juror who does not feel comfortable continuing deliberations [due] to emotional distress." The juror in question was Juror 31. He was brought into the court room, and the judge made inquiry as follows:

THE COURT: "Mr. [Juror 31]?"

THE JUROR: "It is me again."

THE COURT: "One moment. All right, Mr. [Juror 31], I received a note from your foreperson."

THE JUROR: "Correct."

THE COURT: "And let me tell you what he represented to me, quote, 'We have a juror who does not feel comfortable continuing with deliberations due to emotional distress.' "

THE JUROR: "Correct."

THE COURT: "That juror is you of whom he speaks?"

THE JUROR: "Correct."

THE COURT: "What is the level of your discomfort, sir, and let me ask you a question, are you at the point where you do not — you feel so uncomfortable that your thoughts and your ability to assess the evidence and weigh the evidence is being affected?"

THE JUROR: "Yes, sir."

THE COURT: "And you feel it is being negatively affected?"

THE JUROR: "Yes, sir."

THE COURT: "What is your request personally, you?"

THE JUROR: "I request that I be removed and one of the alternates be put in my stead."

THE COURT: "Is there anything else that you want to tell me, sir?"

THE JUROR: "Yes, I do."

THE COURT: "Even though — I don't want you to tell me anything about your deliberations, anything that is said about the facts or the case itself. And you haven't told me anything, so I'm sorry, I should have put this question to you. Have you told me everything you want to tell me about your level of discomfort?"

THE JUROR: "Yes."

THE COURT: "And have you expressed to your fellow jurors that you are so uncomfortable that you do not want to complete your jury service?"

THE JUROR: "I have told them and they noticed, and they have actually encouraged me to bring it to the attention of the court."

THE COURT: "Bring it to me?"

THE JUROR: "Yes."

THE COURT: "All right, just one moment. I'm going to have you taken back by [the court officer] to the jury room, but let me first say I commend you for coming forward and being very frank and honest with me."

THE JUROR: "And I appreciate it."

When the juror left the court room, the judge asked counsel for their views. The prosecutor volunteered that "in all [her] years of experience, [she] never had this happen," to which the judge replied, "Nor have I." Both the judge and the prosecutor commented upon the directness of the juror's request to be replaced by an alternate, and the prosecutor expressed surprise at how knowledgeable the juror was about the process. The prosecutor then stated that it might make sense to replace Juror 31 with an alternate, but that she would defer to the judge. After reviewing Juror 31's juror questionnaire, counsel for the codefendant remarked that Juror 31 seemed to be very well educated, and that he appeared to be the only Hispanic juror. Nevertheless, he agreed with the suggestion that Juror 31 be replaced with an alternate.

Counsel for the defendant did not agree; he asked that Juror 31 remain. He expressed concern that Juror 31 was the only Hispanic juror in a case where both defendants were Hispanic, and that deliberations already had gone on for over a day. The prosecutor rejoined that if the only Hispanic juror had gotten sick, the judge would have no alternative but to seat an alternate. The judge agreed with the prosecutor, stating that he did not see how Juror 31's "removal . . . at this time for reasons that he expressed as well as his personal request in any way sets a scene for the defendants to be denied a fair trial." Over formal objection made by the defendant's attorney, the judge proceeded to excuse Juror 31 from further service.

Thereafter, the judge instructed the remaining jurors as follows. "Ladies and gentlemen, for good reason I have removed a juror from your panel. We are about ready to replace him with an alternate." The judge also instructed the jury that they were to start their deliberations anew, explaining that this was necessary because the alternate had not been present, would be offering his views, and they needed to deliberate collectively. The defendant did not object to the judge's instruction.

At 11:45 A.M., an alternate was selected, and the jury were sent out to deliberate. An hour or so later, the jury reported that they had reached a verdict. At 1:04 P.M., it was announced in court that both defendants had been found guilty of armed robbery.

*Discussion.* "The discharge of a deliberating juror is a sensitive undertaking and is fraught with potential for error. It is to be done only in *special circumstances*, and with *special precautions*" (emphasis supplied). *Commonwealth* v. *Connor*, 392 Mass. 838, 843 (1984). The special circumstances are set forth in two statutes, G. L. c. 234, § 26B,[5] and G. L. c. 234A, § 39.[6]

---

[5]General Laws c. 234, § 26B, as amended through St. 1979, c. 344, § 9A, provides in relevant part:

"If, at any time after the final submission of the case by the court to the jury and before the jury has agreed on a verdict, a juror dies, or becomes ill, or is unable to perform his duty for any other good cause shown to the court, the court may order him to be discharged . . . ."

[6]General Laws c. 234A, § 39, as amended by St. 1984, c. 189, § 158, provides in relevant part:

"The court shall have the discretionary authority to dismiss a juror at

See Mass.R.Crim.P. 20(d)(3), 378 Mass. 891 (1979), which largely tracks G. L. c. 234, § 26B.[7] "Although differing in language, the standards under the two statutes have been considered interchangeable or synonymous." *Commonwealth* v. *Olavarria*, 71 Mass. App. Ct. 612, 619 (2008). Both statutes have been construed to permit dismissal "only [for] reasons personal to a juror, having nothing whatever to do with the issues of the case or with the juror's relationship with his fellow jurors." *Commonwealth* v. *Connor, supra* at 844-845. " 'Allowing discharge only for personal reasons ensures that such action will not "affect the substance or the course of the deliberations." ' *Commonwealth* v. *Swafford*, 441 Mass. 329, 336 (2004), quoting *Commonwealth* v. *Connor, supra* at 845 n.4." *Commonwealth* v. *Olavarria, supra* at 619.

The special precautions are set forth in our case law, most notably in *Commonwealth* v. *Connor, supra.* "[A] judge must hold a hearing adequate to determine whether there is good cause to discharge [the] juror." *Id.* at 843-844. "At the hearing, the issues of the case and the juror's relationship to his fellow jurors are not to be discussed." *Id.* at 845. "If the 'problem' juror is questioned, the judge should preliminarily inform him that he cannot be discharged unless he has a personal problem, unrelated to his relationship to his fellow jurors or his views on the case. Unless the juror indicates a belief that he has such a problem, all questioning should cease." *Ibid.* (footnote omitted). "In an appropriate case, after an appropriate hearing and on the basis of appropriate findings, a judge may be in a position to conclude, without the assistance of medical experts, that a juror has a mental or emotional aberration, personal to the juror and unrelated to the merits of the case or the jury's deliberations, and that there is, therefore, good cause to discharge the juror."

any time in the best interests of justice. The court shall have authority to excuse and discharge an impanelled juror prior to jury deliberations after a hearing upon a finding of extreme hardship. The court shall have authority to excuse and discharge a juror participating in jury deliberations after a hearing only upon a finding of an emergency or other compelling reason."

[7]Rule 20(d)(3) authorizes the judge to discharge a juror if the juror dies, becomes ill, "or is unable to perform his duty for any other cause."

*Id.* at 846. However, the judge "has at most a limited discretion to determine that the facts show an inability to perform the functions of a juror, and that inability must appear in the record as a demonstrable reality." *Id.* at 846-847 (quotation omitted). Finally, if and when a deliberating juror is discharged, the judge must instruct the remaining jurors "not only to begin deliberations anew (see G. L. c. 234, § 26B) but also that the reason for discharge is entirely personal and has nothing to do with the discharged juror's views on the case or his relationship with his fellow jurors." *Id.* at 845-846.

Adhering to these procedures is especially important in cases where the jury is at an impasse. "Although a mistrial may be expensive in both human and monetary costs, it is not to be avoided by intrusion into the jury's domain." *Id.* at 844. If it is not scrupulously determined that there is good cause for discharge, there is a risk that "a dissenting juror [will be] allowed to evade [his] responsibilities," *Commonwealth* v. *Garrey*, 436 Mass. 422, 431 (2002). There also is a risk that his replacement "will feel a substantial coercive effect" when joining other jurors who already have agreed upon the guilt or innocence of the accused. *Commonwealth* v. *Olavarria, supra* at 619-620. Furthermore, if, after discharge, the requisite instruction is not given, there is a risk that the remaining jurors will speculate that the juror was dismissed in order to make it possible for a verdict to be reached.

In this case, the appropriate procedures were not followed as to either the hearing or the judge's instruction following Juror 31's discharge. During the hearing, the judge did not inform Juror 31 that he could be discharged only if he had a personal problem; nor did the judge determine that Juror 31's stated emotional distress resulted from personal issues unrelated to his views on the case or his relationship with his fellow jurors. Indeed, as the Commonwealth acknowledges, it appears from the record that the judge was not aware of the specific guidelines set forth in the *Connor* case. The Commonwealth nevertheless posits that the judge properly could discharge Juror 31 on the ground that he was unable to perform his function as a juror due to emotional distress. According to the Commonwealth, emotional distress was an appropriate, personal basis for dis-

missal, because the juror's communications to the judge when questioned about note-taking indicated that he had "a significant level of anxiety" about serving as a juror even before deliberations began.

We are unpersuaded that the juror's remarks when questioned about his note-taking reflected any undue anxiety; they appear to be little more than an attempt to explain why he took notes when, whether he knew it or not, doing so was not permitted in that court room. But even if Juror 31's comments reflected some degree of concern about his ability to fulfil his duties conscientiously, the record is wholly inadequate to support the conclusion that he was suffering from severe emotional or mental distress — beyond the level that often accompanies deliberations — that would justify discharging him during the course of deliberations.

The facts of this case are significantly different from those in *Commonwealth* v. *Leftwich*, 430 Mass. 865, 872-874 (2000), cited by the Commonwealth. In *Leftwich*, prior to the start of the third day of deliberations, one of the jurors insisted upon speaking with the judge. During two subsequent colloquies, the juror informed the judge that she had spoken with her physician the prior afternoon because she was having great difficulty with stress, including difficulty breathing, and that she did not think she could continue to deliberate or be a fair juror. The judge noted that the juror was very emotionally distraught and was shaking "from head to toe." *Id.* at 873. Based upon the physical manifestations of stress observed by the judge, as well as the juror's own report of her distress, the judge determined that the juror was unable to continue deliberations and discharged her over the objection of the defendant. On appeal, the Supreme Judicial Court concluded that the judge did not err or commit an abuse of discretion in discharging the juror, because, even without summoning the juror's physician or a court psychologist to examine the juror, the judge had sufficient basis to find that the juror was suffering from such extreme emotional distress that she could not perform her function as a juror. Also significant to the court's decision was that there was "nothing in the record to indicate that the jury were at an impasse, or that the juror's statements were 'euphemisms' for the fact that the juror was 'per-

sistent in asserting a minority position during deliberations.' "
*Id.* at 874, quoting from *Commonwealth* v. *Connor*, 392 Mass.
at 846.

Here, on the other hand, but for Juror 31's ready agreement
to the judge's questions about the degree of the juror's distress
and its effect upon his ability to assess and weigh the evidence,
there is nothing in the record to establish that he was incapable
of continuing to deliberate. His responses to the judge were
rational and specific, including his request that he be "removed
and one of the alternates be put in [his] stead." Furthermore,
unlike the record in *Leftwich*, the record in the present case
does contain indications of impasse. The jury reported being
unable to reach a unanimous decision at the end of the first day
of deliberations, and, despite seeking and obtaining supple-
mental instruction from the judge, they had yet to reach a verdict
during the morning of the second day. Notably, after Juror 31
was discharged and replaced, the jury reached a verdict in little
more than an hour, even though they were instructed to begin
their deliberations anew.

On this record, we cannot discount the possibility that substan-
tive disagreement about the case was at the root of Juror 31's
emotional distress, and that both he and the other jurors (who,
according to Juror 31, encouraged him to bring his request to
the attention of the judge) were seeking a way for him to be
excused. In sum, the discharge of Juror 31 — to which the
defendant timely objected — was erroneously effectuated with-
out a proper hearing and findings, was not an appropriate
exercise of the judge's circumscribed discretion, and resulted
in prejudice requiring reversal.

Separately and independently, the judge also erred in failing
to instruct the jury that the reason for Juror 31's dismissal was
entirely personal and unrelated to his views about the case or
his relationship with the remainder of the jury. The judge merely
said that the defendant had been discharged for "good reason."
Because the defendant did not object to the judge's instruction,
we review only to determine whether the error created a sub-
stantial risk of a miscarriage of justice. See *Commonwealth* v.
*Zimmerman*, 441 Mass. 146, 150-152 (2004).

"There will be occasions where the circumstances surround-

ing the dismissal of a deliberating juror will leave no room for speculation as to the reason for the discharge, such that the failure to give a *Connor* instruction is not error . . . . But such circumstances will be rare . . . ." *Id.* at 151. See *Commonwealth* v. *Rodriguez*, 63 Mass. App. Ct. 660, 677 (2005). This case does not present the rare circumstances necessary to deviate from the general rule.

Although the Commonwealth asserts that we can be confident the remaining jurors were aware that Juror 31 was experiencing emotional distress and that he was discharged on that basis, it begs the question of the source of his emotional distress. Where the jury previously had informed the judge that they were unable to reach a verdict, it was particularly important that they be instructed that Juror 31's removal had nothing to do with his views on the case lest they speculate that he was removed because he was perceived to be an obstacle to their reaching a verdict. In the circumstances presented, the absence of a proper instruction created a substantial risk of a miscarriage of justice. See *id.* at 678. Contrast *Commonwealth* v. *Peppicelli*, 70 Mass. App. Ct. 87, 95-96 (2007).

*Conclusion.* For the foregoing reasons, the judgment is reversed, and the verdict set aside.

*So ordered.*